[Civ. No. 1519.    Third Appellate District.—June 14, 1916.]

W. W. COLM, Appellant, v. MARY F. FRANCIS, Respondent; WEST VIRGINIA OIL COMPANY, Defendant.

SPECIFIC PERFORMANCE—CONTRACT FOR LEASE OF LAND—PLEADING—SUFFICIENCY OF COMPLAINT—CONDITIONS TO EXECUTION—CONSTRUCTION OF CONTRACT.—A complaint in an action for the specific performance of a contract for a lease of land for the purpose of exploring the same for oil is not subject to general demurrer on the ground that it disclosed that the lease was to be executed only when the patent to the land had been issued and the land conveyed to the defendant, where it is alleged that such defendant had received a conveyance of such land after the issuance to his grantor of the final receipt of the receiver of the United States land office for a patent to such land, and it appears from the contract that no express reference is made therein to a patent, but the execution of the lease was made dependent upon "the consummation of the patent proceedings."

ID.—CONTRACT TO SELL TO THIRD PARTY—SUFFICIENCY OF COMPLAINT——CONSUMMATION OF SALE NOT SHOWN.—In such an action the complaint is not subject to general demurrer in alleging that the defendant, previous to the commencement of the action, made a transfer of all her interest in the property to a third party, where there is no further averment that she had disposed of or sold the land.

ID.—CONTRACT FOR LEASE OF OIL LANDS—SUFFICIENCY OF CONSIDERATION — DEVELOPMENT WORK. — "Development work" already performed and to be performed is a sufficient consideration to support a contract for a lease of lands for the discovery of oil.

ID.—LEASE—ADEQUACY OF CONSIDERATION.—An agreement on the part of the lessee of oil land to do all work at his own expense, pay all taxes on the personal property, and pay to the lessor as rent or royalty one-eighth of all the proceeds of oil produced, constitutes a fair, just, and reasonable consideration for the lease.

ID.—PLEADING — SUFFICIENCY OF COMPLAINT — TRUTH OF FACTS. — In passing upon the question of the sufficiency or insufficiency of a complaint to state a cause of action, it is wholly beyond the scope of the inquiry to ascertain whether the facts stated are true or untrue.

ID.—SPECIFIC PERFORMANCE OF CONTRACT—ADEQUACY OF CONSIDERATION—PLEADING AND EVIDENCE.—Adequacy of consideration for a contract whose terms are sought to be enforced through a decree of a court of equity must be pleaded and proved.

ID. — PUBLIC LANDS — RECEIVER'S FINAL RECEIPT — CONVEYANCE OF EQUITABLE TITLE.—The issuance to an applicant for a patent to government land of the receiver's final receipt constitutes a conveyance to him by the government of the equitable title, and thereafter the government, until patent is issued, holds the legal title as a mere trustee for the applicant without any further proprietary interest in the land.

APPEAL from a judgment of the Superior Court of Kern County. J. W. Mahon, Judge.

The facts are stated in the opinion of the court.

T. N. Harvey, for Appellant.

Matthew S. Platz, for Respondent Mary F. Francis.

Geo. E. Whitaker, for Defendant West Virginia Oil Company.

HART, J.—This is a suit for the specific performance of a certain contract for a lease, or, more accurately speaking, to

compel the defendant, Mary F. Francis, to execute a lease of certain land to the plaintiff in accordance with the terms of a certain written agreement, to be hereafter more specifically referred to.

The said defendant (respondent herein) demurred to the complaint on general and special grounds. The demurrer was sustained and, the plaintiff refusing or failing to amend, judgment was thereupon entered against him and in favor of the respondent.

This appeal is brought here by the plaintiff from said judgment.

The case as made by the complaint is this: That one P. J. O'Brien and one F. P. Francis, both residents of Kern County, each claimed, adversely to the other, to be the owner and holder of the possessory title to certain government lands in Kern County, "under and by virtue of certain mineral locations and mesne conveyances of the same"; said lands being described in the complaint as the northeast quarter and the southeast quarter of section 6, township 11 north, of range 23 west, San Bernardino meridian; that said O'Brien and Francis, on the tenth day of September, 1908, entered into a certain written agreement, which was filed for record in the office of the county recorder of Kern County on the nineteenth day of October, 1908, and which agreement, in substance, recited and covenanted as follows: That one Edward Fox was desirous and willing to exploit said northeast quarter and develop the mineral deposits supposed to be contained therein, consisting of crude petroleum, "for and in consideration of his receiving a deed of grant, bargain and sale to the northeast and southwest quarters of said northeast quarter," in accordance with the terms of a certain agreement entered into between said P. J. O'Brien and said Edward Fox on the twenty-sixth day of July, 1908; that "whereas, it is deemed advisable and to the best interests of the parties hereto that an amicable adjustment be made of the conflicting claims of said parties to the lands in question and hereinabove described and that litigation be avoided." Then follows a covenant whereby Francis was to receive, from the land allotted to O'Brien in each of the quarter-sections named, thirty-five acres, and was to have the first claim or selection of thirty-five acres in either the one or the other of said sections, and O'Brien was, after such selection by Francis, to have the right

to exercise his selection of the forty-five acres in the other quarter-section, in each case the selection to embrace one solid piece or parcel of land; that, after the execution of the said agreement, and on the sixteenth day of November, 1908, the said Francis, as party of the first part, entered into an agreement in writing with the said Edward Fox, as party of the second part, which agreement was filed for record in the office of the county recorder of Kern County, on the twenty-first day of January, 1909. In said agreement, which is set out in the complaint *in haec verba,* it was recited, covenanted, and agreed: That, whereas, said O'Brien and Francis are owners as tenants in common of the said northeast quarter of said section 6, and that "development work for oil upon said land is now being carried on and performed by the party of the second part; that, upon the discovery of oil in paying quantities, by reason of said development work, patent proceedings are to be instituted by said Francis and O'Brien for the purpose of procuring a United States patent to the land hereinabove described"; that by the said agreement between Francis and O'Brien, there were to be conveyed to and vested in the former, "upon the consummation of the patent proceedings above referred to," thirty-five acres of said quarter-section; that "it is not yet determined out of what particular portion of said northeast quarter of said section 6 the said thirty-five acres so to be conveyed to and vested in said Francis are to be taken or segregated; that, "for and in consideration of the said development work, performed and to be performed by the said party of the second part upon and for the benefit of said northeast quarter of said section six hereinabove described and for other good and sufficient considerations moving from the party of the second part to the party of the first part, the party of the first part hereby agrees, that when said thirty-five acres of land so to be conveyed to and title vested in him as aforesaid, is segregated from the remaining portion of said northeast quarter of section six, and conveyed to and vested in him, he will execute and deliver to said party of the second part an Indenture of Lease of said thirty-five acres of land, which said Indenture of Lease shall embody among others, the following provisions, to-wit: That the said party of the first part, as lessor, shall lease, demise and let unto the said party of the second part, as lessee, the said thirty-five acres of land, being a portion of said north-

east quarter of said section six, hereinbefore referred to, together with the exclusive right to mine, dig, excavate, bore, and drill for and otherwise to collect, develop and obtain petroleum oil, natural gas, naphtha, and other hydro-carbon and kindred substances, and also water, and the right to sever and remove said substances from said lands, also to construct, maintain and use over and upon said land, roads, pipe lines, telephone lines, storage tanks, engines, machinery, and other structures.''

Subsequent to the making of the foregoing agreement, the said F. P. Francis died, his estate was administered upon by his widow, Mary F. Francis, the respondent herein, and, by a decree of the superior court of the county of Kern, sitting in probate, made and entered on the thirteenth day of July, 1910, said estate, including the interest of her deceased husband in and to the agreement of September 10, 1908, between the said deceased and the said O'Brien, concerning the land described in the complaint, was distributed to the said Mary F. Francis.

It is further alleged that subsequent to the making of the agreement between the said Fox and the said Frank P. Francis, and after the death of the latter, the said Fox discovered crude petroleum in large and paying quantities in and upon the said northeast quarter of the said section 6; that upon the said discovery of crude petroleum oil, application for a United States patent to said northeast quarter was made by said P. J. O'Brien, ''and after proceedings had and taken in the United States Land Office at Los Angeles, California, the Receiver's final receipt on said application for a patent was duly issued to said P. J. O'Brien for said northeast quarter of section six; that, at or about the time of the issuance of said receiver's final receipt above referred to, the said P. J. O'Brien conveyed to the said defendant, Mary F. Francis, as successor in interest of the estate of the said F. P. Francis, deceased, in accordance with the terms of the agreement made by him with said Francis,'' thirty-five and four-teen-hundredths acres of the land described in the complaint, said thirty-five acres and fraction of an acre being specifically described in the complaint.

On the second day of July, 1909, the said Edward Fox by an instrument in writing transferred and assigned all his right, title, and interest in and to said agreement of Novem-

ber 16, 1908, between himself and the said Frank P. Francis, to one Lewis Hicks, the said transfer having been, on the sixth day of July, 1909, recorded in the office of the county recorder of Kern County; and, on the twenty-eighth day of June, 1912, Hicks, by an instrument in writing, transferred and conveyed the said agreement and all rights thereunder to the plaintiff and appellant herein.

It is charged that, after the estate of F. P. Francis, deceased, was distributed to the defendant, Mary F. Francis, and subsequent to the issuance of the United States receiver's final receipt and the conveyance by the said P. J. O'Brien to said Mary F. Francis of the thirty-five acres of land above mentioned, "and notwithstanding the existence of said agreement of lease, which has never been canceled, vacated or set aside, and of which agreement of lease the said defendant, Mary F. Francis, had actual as well as constructive knowledge at all times herein mentioned, the said defendant, Mary F. Francis, entered into a contract of sale with one E. S. Good, by which the said defendant, Mary F. Francis, agreed to sell to the said E. S. Good the above mentioned and described land for the purpose of drilling and operating the same for the production of oil therefrom"; that, in accordance with said agreement to sell, the said defendant placed the said Good in possession of said land; that said Good has assigned and transferred all his title and interest in and to said agreement to sell to the defendant, West Virginia Oil Company, which company "has at all times since said assignment been in the occupancy and possession of said described land and claiming some right, title and interest in said land, but plaintiff alleges that the same is without right or merit and is subject and subordinate to plaintiff's rights in said lease and said described land."

The plaintiff states that, on or about the twenty-sixth day of September, 1912, he made a demand on the respondent for a lease of said thirty-five acres in accordance with the terms of the written agreement of November 16, 1908, but that she has ever since failed and refused, and still fails and refuses, to execute an agreement of lease to the plaintiff; that plaintiff has at all times since the assignment of the said agreement to him been ready and willing "and is now ready and willing to perform all of the terms and conditions of said lease to be by him performed as lessee."

The statement of the alleged special grounds of demurrer, so far as the first specification is concerned, is wanting in clearness. While the first and second specifications declare that the complaint is ambiguous and unintelligible, and that the court has no jurisdiction over the subject matter of the action, they in fact involve objections to the complaint on general rather than special grounds. More explicitly speaking, the necessary legal effect of the demurrer in those particulars is that the complaint is insufficient in the statement of a cause of action, because it discloses that the lease was to be executed only when the patent to the land described in the complaint was issued to O'Brien and after he had conveyed to Francis the particular thirty-five acres of land which their agreement of September 10, 1908, called for, and that it does not appear from the complaint that either a patent or the receiver's final receipt on the application of a patent to said land had been issued to O'Brien or to any other person, or that the land had been segregated and the parcel to which Francis was entitled conveyed to him by O'Brien in pursuance of the terms of said agreement.

The averments relative to the alleged contract by the defendant to sell the land to the said E. S. Good, as well as those relative to the alleged transfer of the said agreement to sell to the defendant, West Virginia Oil Company, are also challenged as being enveloped in ambiguity and characterized by unintelligibleness. The complaint, in the particular referred to, is not amenable to the objection thus made. It is true that the agreement to sell was not set out in full in the complaint, as counsel for the respondent seems to think bught to have been done. But it was within the rights of the plaintiff to plead said contract in a manner consistent with the dictates of his own judgment, so long as he made it clearly to appear in his complaint that such a contract had been made, and that under it claims were made to the property in question adverse to his alleged rights therein. And the complaint does clearly show that such a contract had been made, was still in existence, and that under it the West Virginia Oil Company claims an interest in the premises in dispute adversely to the plaintiff's claim of interest in said property under the contract for a lease.

The most important points urged here, however, are that the complaint does not state a cause of action for the relief

herein sought, because it fails to disclose that the conditions upon which the lease was to be made and delivered to Fox or his assignees had taken place or been complied with, and because, further, it fails to show an adequate consideration either for the contract for a lease or for the lease itself. It is further contended that the defendant, Mary F. Francis, is not a real party in interest.

These contentions are without legal force, and the demurrer was, therefore, erroneously sustained.

The theory of the respondent is that, under the terms of the contract between Francis and Fox, the latter could acquire no right to the lease until a patent to the land in question had actually been issued by the government to O'Brien. But there is no language in the contract between Francis and Fox which requires that instrument to be construed to mean that, as a condition precedent to the execution of the lease or to the right of Fox to compel the execution of the lease, a patent must have actually been issued to and received by O'Brien to the lands described in the complaint. The contract itself makes no express reference to a patent. The language of the preamble to the contract, viz., that the thirty-five acres were to be conveyed to and vested in said Francis *"upon the consummation of the patent proceedings,"* does not say, nor do we believe it may reasonably be held to have been intended to say, that the actual issuance of a patent by the government should have taken place as a condition to the execution of the lease. Indeed, the "consummation of the patent proceedings" by the applicant could have gone no further than establishing his right to a patent—he could not himself, quite obviously, issue the patent. All that the contract called for, so far as was concerned Fox's right to a lease from Francis, was that the latter should acquire title to the thirty-five acres of land selected by him, and that he did acquire a title to thirty-five acres of land, which were selected and segregated from the northeast quarter of section 6, and conveyed to the successor in interest to his estate, the complaint very clearly discloses. That pleading, as has been shown, alleges that, upon the discovery of crude petroleum oil on the northeast quarter of section 6, due proceedings were had in the United States land office for the acquirement of a patent to said land, and thereupon the receiver's final receipt entitling the applicant to a patent "was duly issued to the

said P. J. O'Brien for said northeast quarter of said section 6," and that "at the time of the issuance of said receiver's final receipt" O'Brien conveyed to the respondent, as the successor in interest in the estate of her deceased husband, thirty-five acres out of the said northeast quarter.

The issuance to O'Brien of the receiver's final receipt constituted a conveyance to him by the government of the equitable title to the land. Until the patent was issued, the government was, of course, the holder of the legal title, but it held it as a mere trustee for O'Brien, and no longer had a proprietary or, indeed, any interest whatever in the land itself. The discharge of its trust lay in the mere ministerial act of its officers charged with that duty in issuing the patent—the mere evidence of O'Brien's ownership in fee of the land. O'Brien's title, so far as dominion over it was concerned, became complete when he received the final certificate of the receiver.

The foregoing views are sustained by the decisions of the courts as well as by the adjudications of the land department of the government.

In *Barney* v. *Dolph*, 97 U. S. 652, 656, [24 L. Ed. 1063], it is said: "When the right to a patent once became vested in a settler under the law, it was equivalent, so far as the government was concerned, to a patent actually issued. The execution and delivery of the patent after the right to it is complete are the mere ministerial acts of the officer charged with that duty."

In a case before the Interior Department—*Aspen Cons. Gold Min. Co.* v. *Williams*, 27 Land Dec. 16—Secretary Bliss said: "Where an entry and final certificate are obtained by compliance with the public land laws, the right of the entryman or purchaser is complete, and his right or title will not be impaired by any delay in issuing the patent, and when issued the patent will relate back to the date of the entry or purchase and give effect thereto from that time." (See, also, *Carroll* v. *Safford*, 3 How. 441, 461, [11 L. Ed. 671]; *Witherspoon* v. *Duncan*, 4 Wall. 210, 218, 220, [18 L. Ed. 339]; *Stark* v. *Starr*, 6 Wall. 402, 418, [18 L. Ed. 925]; *Amador Medean Gold Min. Co.* v. *South Hill Gold Min. Co.*, 13 Sawy. 523 [36 Fed. 668].)

Again, in *Harkrader* v. *Goldstein*, 31 Land Dec. 93, Acting Secretary Ryan said: "Having complied with all the terms

and conditions necessary to obtaining title, and the officers of the government whose duty it was to act in the premises in the first instance having accepted his proof and issued final certificate of entry thereon, the town site entryman and those for whom he was trustee had upon the face of the record acquired *a vested interest* in the land, and under the law had become *prima facie* the equitable owners thereof and entitled to a patent.'' (See, also, *Kern Oil Co.* v. *Clarke,* 30 Land Dec. 550; *Skinner* v. *Fisher,* 40 Land Dec. 112; *In re Southern Pac. R. R. Co.,* 32 Land Dec. 51, 64; *Wirth* v. *Branson,* 98 U. S. 118, 121, [25 L. Ed. 86]; *Simmons* v. *Wagner,* 101 U. S. 260, 261, [25 L. Ed. 910].)

It is true that the government has it within its power to refuse, for sufficient reasons—for instance, for fraud in the procurement of the final certificate—to issue a patent after the final certificate therefor has been issued, but, in the absence of a showing that some reason exists for the withholding of or refusal to issue a patent, it cannot be assumed that the government has the legal right to do so, nor that, a final certificate for the land having been issued, the issuance of a patent will not follow in due course.

Thus it will be observed that O'Brien, having acquired an equitable title to the northeast quarter of section 6, conveyed to Mrs. Francis, as the successor in interest to her deceased husband, a similar title to thirty-five acres carved out of said quarter-section, in accordance with the terms of the contract between O'Brien and her husband. The contract between Francis and Fox does not call for any particular kind of title —that is, it does not provide, as one of the conditions upon which Fox would be entitled to a lease of Francis' thirty-five acres, that the latter should first have vested in him a *legal* title to the land. It merely provides that title to the land shall be vested in him—a title which, whether legal or equitable or both, would vest in him full dominion over the land so conveyed, with the power and right to dispose of it as he pleased. And, as by the receiver's final certificate and O'Brien's conveyance, such a title was vested in Francis or in his successor in interest, it follows, of course, that that one of the several conditions upon which Fox was entitled to the lease under his contract with Francis had been complied with.

The construction thus given the contract for a lease harmonizes with the practical construction to which the parties themselves subjected the contract between O'Brien and Francis. Upon the issuance of the receiver's final receipt to O'Brien, Mrs. Francis, in the exercise of her right under said contract to a first selection of thirty-five acres out of the northeast quarter, selected and had set off to her said thirty-five acres, and O'Brien conveyed the same to her and she accepted the conveyance—all this, in pursuance of said contract between O'Brien and Francis, the language of which, so far as that particular part of it was concerned, was followed by the contract for the lease.

Counsel for the respondent has filed with the papers in this case (not contained in the transcript on appeal) a certified statement by the register of the United States land office at Los Angeles, dated June 9, 1913, in which that officer declares that as a matter of fact no final certificate has ever been issued out of said office for the said quarter-section, and in effect makes the singularly novel proposition that, in determining whether the complaint is wanting in the statement of a cause of action because no title of any character to said land has vested in Francis or O'Brien, this court may, by virtue of the provisions of section 1875, subdivision 3, of the Code of Civil Procedure, take judicial notice of the fact that no final certificate has ever been issued out of said land office for a patent to said land, and to aid it the court may inspect or examine the said certified statement of the register. The proposition is so obviously unsound that it would seem that no notice should be given to it. However, counsel makes the point and the obvious reply is that the rule referred to is one of evidence and not of pleading. It is only the statement of a proposition plainly within the realm of commonplaces to say that, in passing upon the question of the sufficiency or insufficiency of a complaint to state a cause of action, it is wholly beyond the scope of the inquiry to ascertain whether the facts stated are true or untrue. That is always the ultimate question to be determined by the evidence upon a trial of the questions of fact. Obviously, the complaint, when appropriately challenged, whether for want of sufficient facts or for an insufficient or inartificial statement of the facts, must stand or fall by its own force. Nothing *dehors* the pleading itself can

be considered to determine whether it is obnoxious to objections made against it as a pleading.

It is next contended that the complaint shows that the defendant, Mary F. Francis, previously to the commencement of this action, had transferred her right, title, and interest in and to the premises in question to one Good, that she now has no interest in the property to which the lease relates, that she is not the real party in interest, and that, as to her, specific performance of the contract for a lease is impossible. The complaint does not state that Mrs. Francis had disposed of or sold the land in question. It alleges that she entered into a contract with said Good whereby she agreed to sell to him the thirty-five acres, and that Good transferred said contract and his right to purchase thereunder to the defendant, West Virginia Oil Company. No sale of the property by virtue of the terms of said contract had been consummated, so far as the complaint shows. Mrs. Francis, being still the owner of the property, is, of course, legally capable of executing the lease. It was manifestly proper to make the defendant, West Virginia Oil Company, a party defendant, since it claimed some interest in the property by reason of the agreement to sell.

The last point made is that the contract for the lease is not supported by a consideration, and that the consideration moving to Francis for the execution of the lease is not shown by the complaint to be adequate.

The rule that adequacy of consideration for a contract whose terms are sought to be enforced through a decree of a court of equity must be pleaded and proved is not only expressly declared by our code (Civ. Code, sec. 3391), but is so firmly settled by the authorities that it is unnecessary to cite any upon that proposition. And we think it is made very clear by the complaint in the case at bar that that rule, so far as pleading is concerned, has been fully complied with both as to the contract which constitutes the basis of this action and the proposed lease. The contract for the lease recites that "for and in consideration of the said development work performed and to be performed by the said party of the second part upon and for the benefit of said northeast quarter of said section hereinabove described and for other good and sufficient considerations moving from the party of the second part," etc. Thus it will be noted that one of the

30 Cal. App.—48

considerations for the contract of lease was "development work" already performed by Fox, and this itself was a consideration sufficient to support said contract. As to the lease itself, the contract provides that the lessee shall do all the work of drilling wells, furnish all the labor and materials and machinery, and erect structures and such other appurtenances as may be necessary for the production of oil in paying quantities, pay all taxes on all the personal property on the premises, including the machinery and structures referred to, and pay to the lessor, "as rent or royalty for said lands, one-eighth of all the proceeds of oil or other substances which may be produced or saved from the premises, and from the wells therein, less the amount consumed in production"; that the royalty so due and to be paid to the lessor by the lessee shall be paid in products or cash at the option of the lessor, the latter to furnish the lessee with a monthly statement showing production of oil and other substances from the land. We cannot say that this does not constitute a fair, just, and reasonable consideration. At any rate, on the face of the complaint it appears to be adequate and equitable.

The judgment is reversed, with directions to the court below to allow the respondent such time within which to answer the complaint as to it may appear reasonable.

Chipman, P. J., and Ellison, J., *pro tem.*, concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 10, 1916.