[Civ. No. 18379. Third Dist. May 30, 1980.]

CHARLES P. GARTON et al., Plaintiffs and Appellants, v.
TITLE INSURANCE AND TRUST COMPANY et al.,
Defendants and Respondents.

**COUNSEL**

Mikacich, Schenk & Gale and James H. Schenk for Plaintiffs and Appellants.

McDonough, Holland, Schwartz & Allen and Richard W. Nichols for Defendants and Respondents.

---

## OPINION

**REYNOSO, J.**—We consider whether a cause of action was stated on the basis of (1) a false acknowledgment on a deed of trust, and (2) for breach of contract and negligent performance of duties as title searcher and escrow holder in a transaction dealing with real property. Plaintiffs Charles P. and Burleen Garton appeal from a judgment of dismissal with prejudice in favor of defendants Title Insurance and Trust Company (TI&T) and Stephen Craig Hunter. The Superior Court of Sacramento County sustained a demurrer to their second amended complaint without leave to amend. We reverse and remand.[1]

A summary of the complaint's allegations follow. The appeal, of course, deals only with the causes of action against TI&T and Hunter. Defendant Pioneer Realty is the corporate employer of defendants Miller, Silva and Munoz. Silva and Munoz are licensed real estate salespersons, and Miller is a licensed real estate broker. TI&T is the corporate employer of Hunter and Reed. Hunter is a commissioned notary public, and Reed is an escrow officer.

The factual background is this: In 1977 Charles Jeffries was the owner of real property located in Sacramento County. Jeffries entered into two written contracts to sell two parcels of his property to plaintiffs and Charles and Anita Murphy. The properties to be sold were designated parcels 1 and 2, and each contained approximately 5.001 acres. Parcel 1 was entirely within a portion of a larger parcel recorded in the Sacramento County Assessor's (County Assessor) map as parcel number 136-18-10. The western one-half of parcel 2 was included within the same parcel number; however, the eastern one-half was included within

---

[1]The second amended complaint states nine causes of action. Plaintiffs concede that the fourth and eighth causes of action are not stated against these responding defendants, and we hold that the ninth cause of action does not state a cause of action against them.

another parcel recorded in the County Assessor's map as number 136-18-11. This may be illustrated as follows:

Fig. A.                    Fig. B

Previously, in 1953 the parcel of property which may be identified as County Assessor's number 136-18-11, was conveyed by Hartford and Gladys Archibald to Frank and Sonoma Smith. The Archibalds reserved unto themselves "all of the gas, oil, minerals in and under said land, and all rights thereto, including, but not limited to, the perpetual rights of ingress and egress to and from said land for the purpose of

drilling, exploring and mining, and in every way operating for such oil, gas and minerals and removing the same." Jeffries was a successor in interest of the Smiths and, as plaintiffs would later discover, Jeffries could convey full title to parcel 1 and to the western one-half of parcel 2. He could not convey full title to the eastern one-half of parcel 2 since the Archibalds owned the reservation of oil, gas and mineral rights.

The contracts of the sale of the Jeffries property provide that Pioneer Realty was to receive a brokerage commission upon the sale of each parcel, and that escrow for the sale of each parcel was to be opened with TI&T. Escrow was opened. Pursuant to application by Pioneer Realty, TI&T prepared four title reports.

The first title report, denominated the initial report and dated February 18, 1977, listed plaintiffs and the Murphys as purchasers and reported only on the title of the property lying within County Assessor's parcel 136-18-10. It did not show the reservation of oil, gas and mineral rights in the Archibalds; those reservations were in parcel 136-18-11. The second report, denominated the first amended title report dated May 6, 1977, listed only the Murphys as purchasers and reported only on the property contained in County Assessor's parcel number 136-18-10. The second amended report, dated July 6, 1977, likewise listed only the Murphys as purchasers and only reported on the title of the property within assessor's parcel number 136-18-10.

The third amended title report was dated July 15, 1977. It listed both the Murphys and plaintiffs as the purchasers. This report was made on the property contained in assessor's parcel number 136-18-11 as well as 136-18-10, and did disclose the reservation of oil, gas and mineral rights in the Archibalds.

Plaintiffs submitted escrow instructions jointly with the Murphys on March 15, 1977, and for themselves alone on August 17, 1977. Plaintiffs allege that on August 17, 1977, defendant Silva represented to them that the second amended title report was the report to which the escrow instructions referred, and that the second and third amended title reports were the same. Plaintiffs further allege that Silva failed to inform them that the third amended report showed a reservation of oil, gas and mineral rights in the Archibalds.

When plaintiffs submitted their escrow instructions to TI&T they also submitted a note secured by deed of trust and a deed of trust.

Plaintiffs signed the note and deed of trust in the presence of defendant Silva alone, and neither the note nor deed of trust contained an exception for the reservation of oil, gas and mineral rights in the Archibalds. On August 18, 1977, defendant Hunter, as notary public, took the acknowledgment of the deed of trust. Such acknowledgment was false since plaintiffs did not appear before Hunter to acknowledge their signatures thereon.

After plaintiffs signed the deed of trust Hunter and TI&T appended an exception setting forth the reservation of oil, gas and mineral rights in the Archibalds. When the deed of trust was recorded it contained such an exception. This action was taken without the knowledge, consent, or permission of the plaintiffs, and was not done in their presence.

Plaintiffs completed the transaction and took title to parcel 2.[2] They were prevented from using the property in the manner they had planned due to the reservation of oil, gas and mineral rights in the Archibalds.

In their first, second, and third causes of action plaintiffs assert liability against defendants TI&T and Hunter for the fraud, deceit, and/or misrepresentation of Silva on an agency theory. In the fifth cause of action plaintiffs assert liability against defendants for falsely taking the acknowledgment of the deed of trust without which the transaction could not have been completed. Plaintiffs further assert that defendants, as escrow holder, title searcher, and title insurer, had an obligation to inform plaintiffs of the reservation of oil, gas and mineral rights, and that they failed to so inform plaintiffs and further prevented plaintiffs from learning of the reservation by taking a false acknowledgment and by appending the exception to the deed of trust without plaintiffs' knowledge.

In their sixth cause of action plaintiffs assert that TI&T had a fiduciary duty as escrow holder, title searcher and title insurer, to find and report to plaintiffs the reservation of the oil, gas and mineral rights. Plaintiffs allege that TI&T failed to discover the reservation in a timely manner and further failed to report the reservation to them. In their seventh cause of action plaintiffs allege that TI&T and Hunter acted in

---

[2]Although the contracts for the purchase and sale of the properties provided for the joint purchase of each parcel by plaintiffs and the Murphys, this was changed prior to completion of the transactions. The Murphys purchased parcel 1, and plaintiffs purchased parcel 2. As we have noted, it is only parcel 2 which is subject to the mineral rights in the Archibalds. The Murphys are not parties to this proceeding.

a negligent, careless, and reckless manner in the handling of the escrow and in taking the acknowledgment of the deed of trust.

In their ninth cause of action plaintiffs allege that when they discovered the reservation of oil, gas and mineral rights they instructed Hunter to attempt to obtain a release of those rights. They seek an injunction ordering defendants to obtain a release of the oil, gas and mineral rights in the property.

TI&T and Hunter successfully demurred to the allegations of the complaint. ▮ A demurrer tests the pleading alone and not the evidence or other extrinsic matters and for this reason will lie only where the defects appear on the face of the pleading. (Code Civ. Proc., § 430.30.) "[I]t is wholly beyond the scope of the inquiry to ascertain whether the facts stated are true or untrue. That is always the ultimate question to be determined by the evidence upon a trial of the questions of fact. Obviously, the complaint, when appropriately challenged, whether for want of sufficient facts or for an insufficient or inartificial [*sic*] statement of the facts, must stand or fall by its own force. Nothing *dehors* the pleading itself can be considered to determine whether it is obnoxious to objections made against it as a pleading." (*Colm* v. *Francis* (1916) 30 Cal.App. 742, 752-753 [159 P. 237].) For purposes of the demurrer, and hence this appeal, TI&T and Hunter have admitted all material, issuable facts properly pleaded in the complaint, however improbable they may be. (*McHugh* v. *Howard* (1958) 165 Cal.App.2d 169, 174 [331 P.2d 674]; *Griffith* v. *Department of Public Works* (1956) 141 Cal.App.2d 376, 381 [296 P.2d 838].) We proceed to consider whether the complaint is sufficient.

I

▮ Causes of action one through three of the second amended complaint are based upon the acts of defendant Silva. Plaintiffs claim a cause against defendants for the alleged misrepresentation of Silva through the doctrine of respondeat superior. ▮ Simply stated, the doctrine of respondeat superior imposes liability upon an innocent principal or employer for the torts of his agent or employee which are committed within the scope of employment whether or not the agent or employee acts in excess of his authority or contrary to his instructions. (1 Witkin, Summary of Cal. Law (8th ed. 1973) Agency and Employment, § 155, pp. 754-755.) Moreover, a principal may become liable for

the fraud and/or misrepresentation of an agent or employee. (*Id.*, § 177, at p. 775.)

■ Defendants argue that the first three causes of action are insufficient because no agency relationship existed between them and Silva. Generally, an allegation of agency is an allegation of ultimate fact and is, of itself, sufficient to avoid a demurrer. (*Skopp* v. *Weaver* (1976) 16 Cal.3d 432, 437 [128 Cal.Rptr. 19, 546 P.2d 307].) Plaintiffs alleged that each of the defendants were the agents and employees of each other and were acting in the course and scope of their agency, employment and authority and with the permission and consent of their codefendants in committing the acts alleged. This is a sufficient allegation of an agency relationship.

Defendants contend, however, that this case comes within an exception to the rule that a general allegation of agency is sufficient. That exception arises where the specific allegations of a complaint overcome the general allegation of agency by showing that no such relationship existed. (*Id.*, at pp. 437-438.) Defendants assert that the complaint tends to show that Silva was employed by Pioneer Realty, and asks that we "judicially notice the normal business practice that a real estate brokerage firm contracts with a title insurance company for services, . . ."

Whether that is the normal business practice or not is of no avail to defendants. The test on demurrer is not whether the allegations are likely to be proven but whether the allegations preclude liability, and the allegations must be construed liberally in favor of the pleader. (*Id.*, at p. 438.) That Silva was employed by Pioneer Realty does not preclude the possibility that, for the particular transactions in question, she was acting as an agent or employee of TI&T as well. Nor does the claim that she was acting as the agent of plaintiffs preclude that possibility. Since the specific allegations of the complaint do not overcome the general allegation of an agency relationship the general allegation is sufficient to avoid a demurrer. The trial court thus erred in sustaining the demurrer to the first, second and third causes of action.

## II

■ We turn to the fifth, sixth and seventh causes of action insofar as they assert liability for the improper notarization of the deed of trust.

The second amended complaint, we recall, alleges that TI&T prepared a deed of trust with plaintiffs as trustors, TI&T as trustee, and Frank and Sonoma Smith as beneficiaries. When the deed of trust was presented to plaintiffs for their signatures it did not contain the mineral reservation in the legal description of the property. After plaintiffs signed the deed of trust an exception for the mineral reservation was appended to the legal description of the property. Hunter took the acknowledgment of the signatures on the deed of trust in plaintiffs' absence. As recorded the deed of trust contained the exception, although plaintiffs had neither seen nor approved such an addition to the deed of trust they had signed. Plaintiffs contend that they were ignorant of the mineral reservation and that had Hunter and TI&T required their presence in order to take the acknowledgment they would have discovered the reservation and thereby could have prevented the closing of the transaction.

Defendants contend that there can be no liability for the false acknowledgment since plaintiffs conceded that the signatures on the deed of trust are their signatures. We disagree. Civil Code section 1185 provides that a notary must not take an acknowledgment of an instrument unless he knows, or has satisfactory evidence, that the "person making such acknowledgment is the individual who is described in and who executed the instrument; . . ." This requirement makes the certificate upon personal knowledge a guaranty of the genuineness of the instrument. (*Anderson* v. *Aronsohn* (1919) 181 Cal. 294, 297 [184 P. 12]; *Joost* v. *Craig* (1901) 131 Cal. 504, 509 [63 P. 840].) The deed of trust which was acknowledged and recorded *was not the deed of trust which was executed by plaintiffs*. The addition of the exception for the reservation of mineral rights in the deed of trust was a material alteration of the instrument which had been executed. By falsely taking the acknowledgment of this altered document Hunter breached his duty as a notary. This is true whether Hunter intentionally took the acknowledgment with knowledge that the document had been altered as alleged in the fifth cause of action, or did so negligently as alleged in the seventh cause of action.

■     That the breach of duty of a notary may lead to liability is well established. (*Iselin-Jefferson Financial Co.* v. *United California Bank* (1976) 16 Cal.3d 886, 889-890 [129 Cal.Rptr. 670, 549 P.2d 142]; *Common Wealth Ins. Systems, Inc.* v. *Kersten* (1974) 40 Cal.App.3d 1014, 1032-1033 [115 Cal.Rptr. 653].) Not every breach imposes liabil-

ity, however. In order for liability to be imposed it must be shown that damages were proximately caused by the breach. (*Iselin-Jefferson Financial Co. v. United California Bank, supra*, 16 Cal.3d at pp. 890-891.) Whether through their own fault, the fault of one or more defendants, or a combination of each, plaintiffs were ignorant of the mineral reservation. By taking the false acknowledgment and recording the altered deed of trust defendants deprived plaintiffs of the opportunity to learn the true facts of the transaction. As the result plaintiffs received less than that for which they had bargained. Such allegations are sufficient to avoid a demurrer.

Finally, we note that the second amended complaint asserts that Hunter was the agent and employee of TI&T. TI&T, as Hunter's employer, may thus be held liable for the improper taking of the acknowledgment. (*Id.*, at pp. 888-889.)

## III

Plaintiffs assert liability against defendants as title abstractors, title insurers, and as escrow holders. We examine each separately.

### A. *Liability of a Title Abstractor.*

■ An abstractor of title, like any other professional, has a duty to exercise due care. "An abstractor of title is hired because of his professional skill, and when searching the public records on behalf of a client he must use the degree of care commensurate with that professional skill [citations]; unlike a title insurer who can define the extent of his liability under the insurance policy, the abstractor must report all matters which could affect his client's interests and which are readily discoverable from those public records ordinarily examined when a reasonably diligent title search is made." (*Contini v. Western Title Ins. Co.* (1974) 40 Cal.App.3d 536, 545-546 [115 Cal.Rptr. 257].) Plaintiffs allege that Pioneer Realty requested on their behalf that TI&T prepare title reports on the subject property. The initial report and the first and second amended reports did not reveal the mineral reservation and although the third amended report did reveal the reservation defendants failed to provide that report to plaintiffs or to otherwise communicate the existence of the reservation to them.

Defendants contend that reference to the initial, first and second amended reports shows that those reports did not contain the results of

a title search of parcel 2 of the purchase agreements. This precludes liability, according to defendants, because it was only parcel 2 which was subject to the mineral reservation. The initial, first and second amended title reports, in fact, do not purport to report the state of the title of either parcel 1 or parcel 2 of the sale agreements. Instead, the legal description of the property abstracted shows that the reports were prepared on County Assessor's parcel 136-18-10, which, as we have noted above, contains all of parcel 1 but only one-half of parcel 2, and which also contains land which was not within either parcel 1 or 2. If, as is alleged by plaintiffs, defendants were requested and agreed to undertake to search the title of both parcels which were subject to the agreements of sale, then it would be a breach of that agreement and/or negligence for them to search the title of only a portion of the property by abstracting only assessor's parcel 136-18-10.

Defendants contend, however, that they should be exonerated for failing to search the title of the eastern one-half of parcel 2 because the agreements of sale described both parcels as being within County Assessor's parcel number 136-18-10. We disagree. The contracts of sale, and the legal description of the parcels attached thereto, specifically describe the subject properties by metes and bounds. It is established that a specific description by metes and bounds controls over a vague description by reference to a map. (Code Civ. Proc., § 2077, esp. subd. 6.) A diligent title searcher should have discovered by reference to the precise legal description of the parcels that the parties were in error in describing both parcels as being within County Assessor's parcel number 136-18-10.[3]

■ Defendants argue that even if they were negligent in failing to list the mineral reservation in the first three title reports (first, first amended and second amended reports), that negligence was not the proximate cause of injury to plaintiffs because the fourth title report, issued more than one month prior to the close of escrow, did show the

---

[3]If the plaintiffs requested defendants to perform a title search on County Assessor's parcel number 136-18-10, rather than requesting a title search on the specific properties subject to the agreements, then defendants may escape liability since they are not required to do more than they undertook to do. Nothing in the complaint or exhibits thereto compels the conclusion that such was the case, however, and the complaint specifically alleges that the reports were requested on all of the property subject to the agreements of sale. Moreover, evidence of plaintiffs' misdescription may be relevant on the question of defendants' breach of duty and may be relevant should defendants' raise a comparative fault defense or seek contribution from other defendants. These matters are issues which may be raised by the evidence and are not relevant on a demurrer to a complaint.

reservation. A title searcher may be held liable only for those damages which are proximately caused by his failure to properly perform the search. (See *Banville* v. *Schmidt* (1974) 37 Cal.App.3d 92, 106 [112 Cal.Rptr. 126].) The question is whether the belated discovery of the reservation of mineral rights and its inclusion in the fourth (third amended) title report precludes liability for the earlier failure to discover and report that defect.

Plaintiffs alleged that they had seen only the initial title report. The other reports were sent to Pioneer Realty. Plaintiffs alleged that they relied upon their inspection of the initial report and Silva's representations as to the other reports in completing the transaction. There are thus three possible intervening causes of plaintiffs' damages: (1) the negligence of Pioneer and its employees in failing to discover the mineral reservation contained in the third amended title report; (2) the intentional misconduct of Silva in misrepresenting the contents of the third amended title report to plaintiffs; and (3) plaintiffs' own negligence in failing to read and approve the legal description contained in the third amended title report, as they stated they had done in their escrow instructions.

Proximate cause is generally held to be a question of fact for the trier of fact to determine based upon the evidence. (See 4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, § 621, p. 2903.) Although each of the above three possible intervening causes might support a finding that defendants' failure to find and disclose the mineral reservation in the first three title reports was not the proximate cause of plaintiffs' damages, none of the possibilities precludes, as a matter of law, liability for that negligence. The resolution of the issue is one which will depend upon the evidence introduced and the evaluation of that evidence by the trier of fact. (*Id.*, §§ 628-647, pp. 2910-2928.) For purposes of ruling on an appeal from the sustaining of a demurrer it is sufficient to state that none of the three possible intervening causes is a superseding cause as a matter of law. The demurrer was therefore incorrectly sustained.

B.  *Liability of a Title Insurer.*

■ Plaintiffs do not contend that defendants are liable under the policy of title insurance issued on the property. Plaintiffs specifically allege that the policy contained an exception for the Archibalds' mineral rights. Rather, plaintiffs complain that defendants failed to find and list the reservation on the preliminary title report and should be held liable

for such failure. The obligation of a title insurer in performing a title search is identical to that of a title abstractor. (*Jarchow* v. *Transamerica Title Ins. Co.* (1975) 48 Cal.App.3d 917, 938-939 [122 Cal. Rptr. 470].) Our discussion above on the liability of a title abstractor is equally applicable to the liability of a title insurer performing a title search.

## C.   *Liability of an Escrow Holder.*

■  An escrow holder bears a fiduciary relationship to each party to the escrow and must comply strictly with the instructions of the principals. (*Common Wealth Ins. Systems, Inc.* v. *Kersten, supra,* 40 Cal. App.3d at p. 1030.) If an escrow holder violates the instruction liability attaches for breach of contract. (*Ibid.*) Plaintiffs alleged that they executed a deed of trust and note which they deposited with defendants for recordation upon the close of escrow. Defendants altered the deed of trust and took a false acknowledgment of plaintiffs' signatures thereon. Under the escrow instructions defendants were not permitted to so act. When defendants discovered that the deed of trust, which they had prepared, was inaccurate they were required to notify plaintiffs and to secure the execution of a new deed of trust. The failure to do so would be a breach of the escrow contract and plaintiffs have thus alleged facts which if proven would establish their entitlement to at least a nominal judgment, and to any damages which they can prove. The demurrer was incorrectly sustained on the contract cause of action.

■  An escrow holder has the duty to exercise ordinary skill and diligence; negligence gives rise to liability for any loss proximately caused by such negligence. (*Common Wealth Ins. Systems, Inc.* v. *Kersten, supra,* 40 Cal.App.3d at p. 1030.) Plaintiffs allege: defendants failed to inform them that the land to be purchased was subject to a reservation of mineral rights; defendants prepared the deed of trust which plaintiffs executed without placing an exception for the mineral rights therein so that plaintiffs did not discover the reservation when they executed the deed of trust; and, when defendants discovered their error they failed to inform plaintiffs of the error but rather altered the deed of trust and took a false acknowledgment so that plaintiffs were prevented from learning of the reservation of mineral rights. These allegations sufficiently allege a breach of duty by defendants.

Unlike a contract action where the plaintiff is entitled to a judgment and nominal damages without proof of actual damages, a negligence ac-

tion may not be maintained in the absence of proof of actual, proximately caused damages. (See *Banville v. Schmidt, supra*, 37 Cal. App.3d at pp. 106-107; *Capell Associates, Inc. v. Central Valley Security Co.* (1968) 260 Cal.App.2d 773, 779, 785 [67 Cal.Rptr. 463].) As we have observed, the question of proximate cause is ordinarily one to be determined by the trier of fact. (*Banville v. Schmidt, supra*, 37 Cal. App.3d at p. 106.) Plaintiffs allege that if defendants had either informed them of the Archibalds' mineral rights, placed an exception in the original deed of trust, or informed them when it was discovered that the deed of trust as executed was incorrect, they would have discovered the reservation in time to prevent the closing of the escrow. We agree. Plaintiffs' averments lead to the conclusion that defendants' negligence was a contributing cause of the injury. Whether there were other causes which may be considered superseding is a question for the trier of fact to determine based upon the evidence. The complaint is sufficient to avoid a demurrer.

## IV

■ In the ninth cause of action plaintiffs seek injunctive relief in the form of an order that defendants obtain a release of the Archibalds' mineral rights. We conclude, as a matter of law, that plaintiffs are not entitled to such relief and the demurrer was properly sustained as to that cause of action.

Throughout our foregoing discussion we have continually noted that, with the exception of nominal damages for a technical breach of contract, plaintiffs are entitled only to those damages which were proximately caused by defendants' acts or omissions. The first element of proximate cause is *cause in fact*. (4 Witkin, Summary of Cal. Law, *supra*, Torts, § 622, p. 2903. See also *Capell Associates, Inc. v. Central Valley Security Co., supra*, 260 Cal.App.2d at pp. 779-780.) Nothing defendants did or did not do in any way caused the land to be subject to the Archibalds' mineral interest. The reservation of that interest was completed in 1953 and has been existing and of record ever since. Had plaintiffs been aware of the interest prior to the completion of the transaction they may have been able to negotiate for a reduced purchase price or to refuse to complete the purchase, but they could not have acquired the land free of the Archibalds' interest. Since the acts or omissions of the defendants did not cause the land to be subject to the Archibalds' interest the cost of removing that interest is not a proper

measure of the plaintiffs' damages, nor are plaintiffs entitled to an order requiring defendants to obtain a release of that interest. The demurrer was properly sustained as to the ninth cause of action.

The judgment is reversed and the cause is remanded to the trial court for further proceedings in accordance with the views expressed herein.

Regan, Acting P. J., and Watt, J.,* concurred.

A petition for a rehearing was denied June 27, 1980, and the opinion was modified to read as printed above.

---

*Assigned by the Chairperson of the Judicial Council.