Filed 1/25/24  Christensen v. First American Title Co. CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

|  |  |
|---|---|
| ANDREW J. CHRISTENSEN, et al.<br><br>Plaintiffs and Appellants,<br><br>v.<br><br>FIRST AMERICAN TITLE CO.,<br><br>Defendant and Respondent. | A166796<br><br>(Alameda County<br>Super. Ct. No. 22CV005893) |

Andrew J. Christensen and Susan M. Christensen (Plaintiffs) appeal from the trial court's order sustaining the demurrer of First American Title Company (First American) without leave to amend, and the subsequent judgment in favor of First American.  We affirm.

FACTUAL BACKGROUND[1]

In 1992, Oscar B. Goodman and Nancy Hanawai Goodman purchased 0.26 acres containing a single-family residence (the Property).  In 1994, the

---

[1] "When reviewing a judgment dismissing a complaint after the granting of a demurrer without leave to amend, courts must assume the truth of the complaint's properly pleaded or implied factual allegations." (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081 (*Schifando*).)

Goodmans purchased a portion of an adjoining lot in order to extend the property line further south (the Addition). The 1994 grant deed identifies both the Property and the Addition together, approximately 0.319 acres (hereafter, the Expanded Property). The Goodmans did not obtain an official lot line adjustment to reflect an expanded parcel.

In 2000, the Goodmans transferred the property to the Hanawai-Goodman Family 2000 Trust (the Hanawai-Goodman Trust) by executing two transfer deeds, one conveying the Property and another conveying the Expanded Property.

In 2013, Benjamin and Gabrielle Blair purchased the Property—not the Expanded Property—from the Hanawai-Goodman Trust. In 2019, Plaintiffs purchased the Property from the Blairs. Although the 2019 grant deed identified only the Property, Plaintiffs allege the Blairs, the Blairs' real estate agent, and Plaintiffs' real estate agent all represented the sale was of the Expanded Property.

First American was the escrow agent and title insurer for the Blairs' 2013 purchase of the Property from the Hanawai-Goodman Trust. First American also was the escrow agent and title insurer for Plaintiffs' 2019 purchase of the Property. Plaintiffs allege First American knew there were two deeds from the Goodmans to the Hanawai-Goodman Trust because of its role in the 2013 purchase.

PROCEDURAL BACKGROUND

In 2022, Plaintiffs sued the Blairs, the Goodmans, the trustees of the Hanawai-Goodman Trust, the real estate agents for the 2019 sale, and First American. As to First American, Plaintiffs asserted a negligence claim based on First American's role in the 2019 sale, alleging First American owed Plaintiffs a duty of care "to accurately represent the size and boundaries of

2

the Subject Property and to exercise reasonable care in ensuring that the legal description of the property is accurate." Plaintiffs also alleged claims for negligence and breach of contract based on First American's role in the 2013 sale.

First American filed a demurrer as to all claims against it. As to the negligence claim based on the 2019 sale, First American argued the duties it owed were limited and it could not have effected a transfer of the Expanded Property because the Blairs owned only the Property. With respect to the negligence claim based on the 2013 sale, First American argued escrow agents do not owe duties to third parties. As to the contract claim, First American argued Plaintiffs were not intended third party beneficiaries of the 2013 contract. The trial court sustained the demurrer without leave to amend and issued judgment in favor of First American.

DISCUSSION

" ' "On appeal from an order of dismissal after an order sustaining a demurrer, our standard of review is de novo, i.e., we exercise our independent judgment about whether the complaint states a cause of action as a matter of law." ' " (*Pointe San Diego Residential Community, L.P. v. Procopio, Cory, Hargreaves & Savitch, LLP* (2011) 195 Cal.App.4th 265, 274.) "It is the validity of the court's action in sustaining a demurrer, not its reasons, which is reviewable." (*Lee v. Bank of America* (1990) 218 Cal.App.3d 914, 919.)

"If the court sustained the demurrer without leave to amend, as here, we must decide whether there is a reasonable possibility the plaintiff could cure the defect with an amendment. [Citation.] If we find that an amendment could cure the defect, we conclude that the trial court abused its discretion and we reverse; if not, no abuse of discretion has occurred.

3

[Citation.]  The plaintiff has the burden of proving that an amendment would cure the defect." (*Schifando, supra,* 31 Cal.4th at p. 1081.)

I.       *Negligence: Plaintiffs' 2019 Purchase*

Plaintiffs argue the trial court erred in sustaining the demurrer as to their claim that First American was negligent in connection with the 2019 purchase.

A.       *Title Insurer*

Plaintiffs argue First American owed them a duty of care in its capacity as title insurer.  We disagree.

"Title insurance is a contract by which the title insurer agrees to indemnify its insured against losses caused by defects in or encumbrances on the title not excepted from coverage.  [Citation.]  An insured's claim against his title insurer is under the policy, and an insured has no separate claim against a title insurer based on negligence or negligent misrepresentation." (*Vournas v. Fidelity Nat. Title Ins. Co.* (1999) 73 Cal.App.4th 668, 675–676; accord, Croskey et al., Cal. Practice Guide: Insurance Litigation (The Rutter Group 2023) ¶ 6:2695.)

Plaintiffs' reliance on *Lee v. Fidelity National Title Ins. Co.* (2010) 188 Cal.App.4th 583 (*Lee*) is not to the contrary.  *Lee* involved a *contract* claim against a title insurer, such that the issue was what property was covered by the title insurance policy in light of an ambiguous description. (*Id.* at pp. 593, 598.)  *Lee* has no bearing on whether Plaintiffs can assert a negligence claim against First American for its conduct as a title insurer.

Accordingly, Plaintiffs fail to state a negligence claim against First American for its conduct as a title insurer in the 2019 sale.

B.    *Escrow Agent*

Plaintiffs argue First American owed them a duty of care as an escrow agent "to identify and include the correct legal description in the grant deeds."

" 'An escrow involves the deposit of documents and/or money with a third party to be delivered on the occurrence of some condition.' [Citation.] An escrow holder is an agent and fiduciary of the parties to the escrow. [Citations.] The agency created by the escrow is limited—limited to the obligation of the escrow holder to carry out the instructions of each of the parties to the escrow. [Citations.] If the escrow holder fails to carry out an instruction it has contracted to perform, the injured party has a cause of action for breach of contract. [Citation.] [¶] In delimiting the scope of an escrow holder's fiduciary duties, then, we start from the principle that '[a]n escrow holder must comply strictly with the instructions of the parties. [Citations.]' [Citation.] On the other hand, an escrow holder 'has no general duty to police the affairs of its depositors'; rather, an escrow holder's obligations are 'limited to faithful compliance with [the depositors'] instructions.' [Citation.] Absent clear evidence of fraud, an escrow holder's obligations are limited to compliance with the parties' instructions." (*Summit Financial Holdings, Ltd. v. Continental Lawyers Title Co.* (2002) 27 Cal.4th 705, 711 (*Summit Financial*).)

Plaintiffs did not attach the escrow instructions to the complaint but argue they could amend the complaint to allege "that the escrow instructions did obligate [First American] to include the correct legal description." They

5

also argue First American had an independent duty of care to identify and include the "correct" legal description.[2]

We assume, without deciding, that First American had a duty to identify and include the correct legal description, either pursuant to the escrow instructions or as part of its duty of care. As First American argues, the complaint alleges the grant deed from the Hanawai-Goodman Trust to the Blairs conveyed solely the Property; thus, the Blairs held title only to the Property, not the Expanded Property. "It is axiomatic that a deed cannot convey more than is owned by the grantor." (3 Miller & Starr, Cal. Real Estate (4th ed. 2015) § 8:58.) Because the grant deed conveying property from the Blairs to Plaintiffs could not include property the Blairs did not own, the legal description of the Property, rather than the Expanded Property, was at issue and was stated correctly. The complaint fails to establish breach of the asserted duty.

In their reply brief, Plaintiffs argue the complaint alleges in the alternative that the Blairs *did* own the Expanded Property. These allegations are based on theories of adverse possession or mutual mistake in the 2013 grant deed. Plaintiffs fail to provide authority that the Blairs could transfer the Expanded Property based on such theories absent a legal proceeding to quiet title or for reformation of the 2013 grant deed. (See 6 Miller & Starr, Cal. Real Estate (4th ed. 2015) § 18:26 ["A title acquired by adverse possession is not a marketable title until the title is established by judicial proceedings against the record owner."].) Thus, Plaintiffs' argument

---

[2] For this proposition, Plaintiffs rely on *Rianda v. San Benito Title Guarantee Co.* (1950) 35 Cal.2d 170, 173, and *Garton v. Title Ins. & Trust Co.* (1980) 106 Cal.App.3d 365, 381, which refer to an escrow agent's duty to exercise reasonable skill and ordinary diligence.

does not change the fact that, under the allegations of the complaint, the Property was the "correct" description for the 2019 grant deed.

Plaintiffs suggest no amendments that could cure this defect. Accordingly, the trial court did not abuse its discretion in denying leave to amend. (*Schifando, supra,* 31 Cal.4th at p. 1081.)

II.      *Negligence: The Blairs' 2013 Purchase*

In a separate cause of action, Plaintiffs assert a negligence claim against First American in connection with its conduct in the Blairs' 2013 purchase of the Property from the Hanawai-Goodman Trust.

"[T]he threshold question in an action for negligence is whether the defendant owed the plaintiff a duty to use care [citation], and the '[r]ecognition of a duty to manage business affairs so as to prevent purely economic loss to third parties in their financial transactions is the exception, not the rule, in negligence law' [citation]. [¶] In *Biakanja v. Irving* (1958) 49 Cal.2d 647, 650 [320 P.2d 16, 65 A.L.R.2d 1358], we stated: 'The determination whether in a specific case the defendant will be held liable to a third person not in privity is a matter of policy and involves the balancing of various factors, among which are the extent to which the transaction was intended to affect the plaintiff, the foreseeability of harm to him, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, and the policy of preventing future harm.' " (*Summit Financial, supra,* 27 Cal.4th at p. 715.)

"Under ordinary circumstances, an escrow holder owes duties only to the parties to the escrow, not to third parties." (2 Miller & Starr, Cal. Real Estate (4th ed. 2015) § 6:18.) Courts applying the *Biakanja* test to determine whether an escrow agent owed a duty of care to third parties have generally

7

adhered to this usual rule and found no duty. (See *Summit Financial, supra,* 27 Cal.4th at pp. 715–716 [under *Biakanja* test, no duty of care owed to assignee of note-holder paid off from escrow in refinancing]; *Alereza v. Chicago Title Co.* (2016) 6 Cal.App.5th 551, 553–554 (*Alereza*) [under *Biakanja* test, escrow agent "did not owe a duty of care to [the plaintiff] because he was not a party to the escrow, not mentioned in the escrow instructions as a third party beneficiary, and did not sustain his losses as a direct result of the escrow company's negligence"].) We reach the same result.

Plaintiffs allege the 2013 transaction was intended to benefit "Plaintiffs and all future owners of the Subject Property because it was the first time the original parcel and the [Addition] should have been officially joined by a lot line adjustment." We need not accept this legal conclusion unsupported by allegations as to contract terms or extrinsic manifestations of such an intent. (*Baldwin v. AAA Northern California, Nevada & Utah Ins. Exchange* (2016) 1 Cal.App.5th 545, 550 ["In reviewing an order sustaining a demurrer, the court does not assume the truth of 'contentions, deductions, or conclusions of fact or law.' "].) Accepting all reasonable inferences from the complaint's factual allegations, First American's role in the 2013 sale transaction was to facilitate a transfer of real property from the Hanawai-Goodman Trust to the Blairs. Any impact on future owners was collateral to the primary purpose of the transaction. (See *Summit Financial, supra,* 27 Cal.4th at p. 715 [" '[the escrow agent] was engaged by Dundrel and Furnish [the homeowner and refinancing lender] to assist them in closing a loan transaction between Dundrel and Furnish, and any impact that transaction may have had on [the third party assignee of homeowner's prior note-holder] was collateral to the primary purpose of the escrow' "]; *Alereza, supra,* 6 Cal.App.5th at p. 560

8

["[the plaintiff] was not a party to the escrow instructions nor was he a third party beneficiary of the transaction" and the escrow agreement was "designed . . . only to complete a business transaction between" the parties to the agreement].)

Plaintiffs allege their injury is certain "because there is a material difference between .26 acres and .319 acres" and was foreseeable "because Blairs and all subsequent purchasers would be paying property tax on .319 acres instead of the original .26 acres of the original lot with the original boundary." The allegations establish certainty, but do not support foreseeability because there are no factual allegations showing First American could have foreseen that the Blairs would, as alleged in the complaint, misrepresent the property they owned when selling it to future buyers and that the real estate agents involved in the future sale would not catch or correct the misrepresentation. (See *Summit Financial, supra,* 27 Cal.4th at pp. 715–716 [" 'although the certainty of injury element is satisfied . . . , the foreseeability of harm element does not support a duty because there is no suggestion [the escrow agent] could have foreseen [the injury]' "].) Similarly, the closeness of connection alleged—that "First American could have avoided the harm and error with proper checking of the documents"—is insufficient. Plaintiffs' injury was caused by their mistaken belief that they bought the Expanded Property, rather than the Property. The connection between this injury and First American's conduct in the 2013 sale transaction is attenuated because the more immediate cause was the alleged misrepresentation by the Blairs and the real estate agents in the 2019 sale. (See *Alereza, supra,* 6 Cal.App.5th at p. 561 ["there was only a remote connection between the misidentification of the insured by [the escrow

9

officer] and [the plaintiff's] eventual financial losses" because "several independent errors separated" the two].)

With respect to moral blame, Plaintiffs allege, "First American bears great moral blame for the conduct in failing to transfer the proper legal description of the entire parcel because it is a simple and obvious issue that they are solely responsible for and for which the consequences are so severe, and is the precise reason that people use title insurance companies to make sure that the technicalities of the transaction are correct." The allegation does not establish moral blame. Even when an escrow company has admitted negligence, the negligence was found not morally blameworthy where, as here, "the escrow officer did not act fraudulently, illegally, or with any intent to cause anyone disadvantage." (*Alereza, supra,* 6 Cal.App.5th at p. 561.)

Finally, Plaintiffs allege the policy of preventing future harm weighs in favor of finding a duty "because title companies are paid to handle these precise issues, and this type of error should not be allowed to go without remedy or else title insurance will be rendered meaningless." We disagree. "Escrow companies already owe a fiduciary duty to parties to an escrow to properly carry out all escrow instructions. [Citation.] Failure of an escrow company to perform gives parties to the escrow a cause of action for breach of contract for any proximately caused damages. [Citation.] For this reason, escrow companies already have both duties and incentives to faithfully execute the escrow instructions of the parties." (*Alereza, supra,* 6 Cal.App.5th at p. 561 [holding the policy of preventing future harm does not require finding a duty to third party].)

Accordingly, the complaint does not state a claim of negligence against First American in connection with the 2013 sale. Because Plaintiffs do not

propose any amendments that could cure the defect, the trial court did not abuse its discretion in denying leave to amend.

III.    *Breach of Contract: The Blairs' 2013 Purchase*

Plaintiffs assert a claim for breach of First American's 2013 contract with the Hanawai-Goodman Trust and the Blairs to provide escrow and title insurance services.

"In California, as in other jurisdictions, it is well established that under some circumstances a third party may bring an action for breach of contract based upon an alleged breach of a contract entered into by other parties." (*Goonewardene v. ADP, LLC* (2019) 6 Cal.5th 817, 826–827 (*Goonewardene*).) To determine whether a third party may do so, courts look to "the express provisions of the contract at issue, as well as all of the relevant circumstances under which the contract was agreed to, in order to determine not only (1) whether the third party would in fact benefit from the contract, but also (2) whether a motivating purpose of the contracting parties was to provide a benefit to the third party, and (3) whether permitting a third party to bring its own breach of contract action against a contracting party is consistent with the objectives of the contract and the reasonable expectations of the contracting parties.  All three elements must be satisfied to permit the third party action to go forward." (*Id.* at p. 830.)

We focus on the second element, the motivating purpose of the parties. To satisfy this element, "the contracting parties must have a motivating purpose to benefit the third party, and not simply knowledge that a benefit to the third party may follow from the contract." (*Goonewardene, supra,* 6 Cal.5th at p. 830.)  The complaint alleges the motivating purpose of the contracting parties "was to join the two parcels into one parcel of .319 acres so that all future owners, including [the] Blairs and Christensens, would

11

have the full property as Goodmans intended when they bought the extra parcel from the Church in 1994." Plaintiffs contend this is sufficient for purposes of a demurrer. We disagree. "Ascertaining whether there was intent to confer a benefit on plaintiff as a third party beneficiary is a question of ordinary contract interpretation." (*The H.N. & Frances C. Berger Foundation v. Perez* (2013) 218 Cal.App.4th 37, 44.) "In reviewing the trial court's ruling on defendants' demurrers, this court is limited to evaluating whether the [contracts] are susceptible to plaintiff's interpretation [as to whether plaintiff was a third party beneficiary], based on the pleaded facts and the documents attached to the operative complaint." (*Id.* at p. 45.)

In *Goonewardene,* as here, the complaint did not quote from or attach the contract at issue. (*Goonewardene, supra,* 6 Cal.5th at p. 832.) The Supreme Court held the complaint's "general allegation . . . that the contract was for the benefit of [the plaintiffs] as well as" the contracting parties was "too vague and conclusory to support the proposition that the parties to the [relevant] contract expressly or impliedly authorized [the plaintiffs] to maintain a breach of contract action" as third party beneficiaries. (*Id.* at p. 833.) Instead, the Supreme Court looked to allegations about specific terms of the contract. (*Ibid.*) We similarly conclude Plaintiffs' allegation about the motivating purpose of the parties is insufficient and we instead consider whether the terms of the contract are susceptible to Plaintiffs' construction.

Plaintiffs argue the complaint supports a reasonable inference that the 2013 contract "required [First American] to include the proper legal description in the deed." This allegation, taken as true, does not establish that a motivating purpose of the contracting parties was to benefit *subsequent purchasers*. In *Goonewardene*, the Supreme Court reasoned that

12

"providing a benefit to employees is ordinarily not among the motivating purposes of a contract between an employer and a payroll company." (*Goonewardene, supra,* 6 Cal.5th at p. 837.) Similarly, providing a benefit to subsequent purchasers of real property is ordinarily not among the motivating purposes of a contract for escrow and title insurance services. Plaintiffs' allegations provide no suggestion that the 2013 contracts were other than ordinary in this regard, and they do not argue they could so establish by amending the complaint. Accordingly, Plaintiffs fail to state a claim for breach of contract as a third party beneficiary, and the trial court did not abuse its discretion in denying leave to amend.

DISPOSITION

The judgment is affirmed. First American shall recover its costs on appeal.


SIMONS, J.


We concur.


JACKSON, P. J.
BURNS, J.


(A166796)

13