636 P.2d 900

**Eddie ORTIZ, Sylvia Ortiz his wife, and Milton Ortiz, Plaintiffs-Appellants,**

**v.**

**GAS COMPANY OF NEW MEXICO, Defendant-Appellee.**

**No. 5089.**

Court of Appeals of New Mexico.

Nov. 5, 1981.

Harold H. Parker, Albuquerque, for plaintiffs-appellants.

Alice Tomlinson-Lorenz, Miller, Stratvert, Torgerson & Brandt, P. A., Albuquerque, for defendant-appellee.

## OPINION

LOPEZ, Judge.

The plaintiffs appeal summary judgment rendered against them in their suit for personal injuries against the defendant based on negligence, strict products liability and implied warranty. We affirm.

The issues we discuss are: 1. whether the gas company has an ongoing duty as a matter of law either to inspect gas appliances which are in use or to warn consumers that gas appliances may become dangerous with use; and 2. whether the gas company is liable under theories of strict products liability or warranty for damages caused by faulty gas appliances which it supplies with gas.

Eddie and Sylvia Ortiz rented an apartment from Carlos Torres in January, 1977. On January 3, 1978, they woke up to discover they had carbon monoxide poisoning. Milton Ortiz, who had spent the previous night at the apartment, also had carbon monoxide poisoning. The gas company inspected the apartment on January 3, 1978, and found that the gas furnace was releasing carbon monoxide and that the gas hot water heater was not properly vented. It red tagged both appliances.

Eddie, Sylvia and Milton Ortiz, plaintiffs, sued Carlos Torres and the Gas Company of New Mexico (gas company) for damages. The plaintiffs settled their claim against Carlos Torres. We will discuss the propriety of the district court's summary judgment on each of plaintiffs' claims against the gas company.

*Negligence.*

On January 1, 1971, the gas company commenced service to the apartment which was owned by Carlos Torres, and eventually rented by Eddie and Sylvia Ortiz. The gas company filed two affidavits by its district safety specialist in support of its motion for summary judgment. The supplemental affidavit stated that the procedures followed by the gas company before commencing service at a residence are to

a) turn on the gas at the meter, b) perform a meter clock test to determine whether there is any leakage, c) determine the gas pressure, and d) light the appliances and test for leaks. Gas service is continued if there are no leaks or defective appliances.

The affidavit also stated that the gas company had

no knowledge or notice of any defective pipes or appliances or of any leaks in the premises . . . until January 3, 1978, when we shut off the water heater and floor furnace and red tagged the appliances.

Plaintiffs argue that since the gas furnace was defective on January 3, 1978, that there is a legal presumption that it was defective on January 1, 1971, when the gas company originally connected the gas. They base this argument on a presumption that a defective condition has not changed unless evidence is presented to show a change. Plaintiffs claim that the gas company did not come forward with any evidence to rebut this presumption, and therefore, failed to establish an absence of a genuine issue of fact.

■ The presumption relied on by the plaintiffs is not usually applied retrospectively. *Ferran v. Jacquez*, 68 N.M. 367, 362 P.2d 519 (1961). If it were allowed retrospective application it would not extend back for seven years. It is too speculative to presume that because the furnace malfunctioned in 1978, that it was not hooked up or inspected properly in 1971, particularly when it apparently functioned adequately for most of the intervening seven years. *Bunn v. Standard Oil Co.*, 251 Iowa 7, 99 N.W.2d 436 (1955).

The plaintiffs also argue that even if all the appliances were in good working condition when hooked up in 1971, the gas company had a duty either to inspect the appliances, presumably on some kind of regular basis, or at least to warn the consumers that gas appliances are inherently dangerous and may become faulty with use. The evidence in the record shows that the gas company did not own, install or control the appliances or the use of the appliances which are located in plaintiffs' apartment. The gas company's policy is to inspect appliances of this kind only when notified of a defect or problem. The New Mexico Supreme Court has refrained from imposing a duty on the gas company as suggested by the plaintiffs, either to warn consumers about use of appliances, or to inspect appliances without notice or knowledge of a defect. *McMurdo v. Southern Union Gas Co.*, 56 N.M. 672, 248 P.2d 668 (1952); *see, Beal v. Southern Union Gas Co.*, 66 N.M. 424, 349 P.2d 337 (1960).

■ Based on *McMurdo*, the law in New Mexico is that the gas company has no duty to warn or inspect gas appliances which it did not own, install, or control, until the gas company had notice or knowledge that the appliances were defective. In this case, it is not disputed that the gas company did not have notice or knowledge of any defects in the gas appliances at the Ortiz residence until January 3, 1978. We have a duty under *Alexander v. Delgado II*, 84 N.M. 717, 507 P.2d 778 (1973), to follow the *McMurdo* case. We hold that there was no material issue of fact to be decided on

the negligence claims against the gas company and summary judgment was properly granted in this respect.

*Strict Products Liability.*

The plaintiffs' second cause of action is based on the theory of strict products liability. Plaintiffs claim that the gas company should be held strictly liable for the faulty furnace. They contend that although the gas company did not manufacture the furnace, it did check the furnace and determine that it was safe for use of the gas company's product. Plaintiffs reason that the gas company's product was defective, because the gas company did not warn users of gas that gas appliances could become dangerous for use with the passage of time.

■ We disagree. The furnace was the faulty product, not the gas; there was no evidence that the gas company manufactured, sold, or controlled the use of the furnace. In New Mexico the theory of strict products liability in tort has been applied to the seller or lessor of a defective product which is unreasonably dangerous to the user or consumer. Restatement of Torts (Second), § 402(A) (1965). *Stang v. Hertz Corporation*, 83 N.M. 730, 497 P.2d 732 (1972). This theory does not encompass holding a utility strictly liable for the safety of appliances which utilize its product, or for the manner in which its product is used. *Harris v. Northwest Natural Gas Company*, 284 Or. 571, 588 P.2d 18 (1977).

■ Due to the fact that there was no evidence that the gas company manufactured, sold or leased the faulty furnace, the plaintiffs have not put forth any material facts which would support their claim under the current state of the law on strict liability in New Mexico. Summary judgment was properly granted in this respect.

*Warranty.*

■ The third cause of action of the plaintiffs is based on warranty. The problem with plaintiffs' claim under warranty is similar to the problem with their claim un-

der strict products liability. The plaintiffs argue that the gas company warranted the safety of the gas appliances used by plaintiffs even though there was no evidence that the gas company sold the appliances to anyone. There must be a sale of goods to bring the warranty provisions of the Uniform Commercial Code of New Mexico, in particular § 55–2–314, N.M.S.A.1978, into operation. Since the gas company did not sell the faulty furnace there is no basis for plaintiffs' cause of action under warranty. *See Swenson Trucking v. Truckweld Equipment*, 604 P.2d 1113 (Alaska 1980). Summary judgment was properly granted in this respect.

The judgment of the trial court is affirmed. Appellate costs shall be paid by the appellant.

IT IS SO ORDERED.

WALTERS, C. J., concurs.

SUTIN, J., concurs specially.