798 P.2d 194

**Lawrence R. ANDRUS, Betty Andrus, and Mrs. Charles B. Whitfield, Plaintiffs–Appellees,**

v.

**GAS COMPANY OF NEW MEXICO, A DIVISION OF PUBLIC SERVICE COMPANY OF NEW MEXICO, Defendant–Appellant.**

No. 10868.

Court of Appeals of New Mexico.

April 19, 1990.

Certiorari Denied June 19, 1990.

William G.W. Shoobridge, Hobbs, for plaintiffs-appellees.

R.D. Mann, Lee M. Rogers, Jr., Atwood, Malone, Mann & Turner, P.A., Roswell, for defendant-appellant.

## OPINION

MINZNER, Judge.

On the court's own motion, the prior opinion is withdrawn and the following is substituted.

The Gas Company of New Mexico (the gas company) appeals from a jury verdict in favor of Mrs. Whitfield, her daughter, Betty Andrus, and son-in-law Lawrence Andrus (plaintiffs) for injuries suffered due to carbon monoxide poisoning. The issues on appeal are (1) whether the district court erred by failing to grant a directed verdict in favor of the gas company, and (2) whether the district court erred in giving a jury instruction on the gas company's duty of care. We affirm.

## BACKGROUND.

On March 19, 1986, after midnight, plaintiffs were overcome by carbon monoxide while sleeping at Whitfield's home. The cause of the poisoning was found to have been the gas furnace which was located outside the back door in a padlocked room. The furnace has a louvered panel door and a solid panel door; the louvered panel door is in the upper part of the furnace and permits access to the pilot light, and the solid panel door is in the lower part of the furnace and permits access to the filter and blower. The solid panel door to the filter and blower compartment had been placed upside down, allowing that door to fall slightly open and causing carbon monoxide to be pulled into the blower compartment and the house. Although there was evidence that when placed upside down, the solid door remained closed, there was also evidence that, when placed incorrectly, the solid door would fall open immediately.

The furnace had been last serviced in late August 1985 by Mr. Don Moore, Whitfield's usual serviceman. At that time, Moore cleaned the filter. Moore testified that there had been no complaints on the furnace between that time and March 1986. Whitfield testified that no one had been in the furnace room other than Mr. Billy Ray Stephenson, an employee of the gas company, and Mr. Jimmy Sosa, an employee of Water Conditioning Company of Roswell.

On March 1, at approximately 4:00 p.m., Stephenson changed the gas meter in the alley, which required him to turn off Whitfield's gas and relight her appliances, a water heater and a furnace, after the procedure was finished. To get to the furnace pilot light, Stephenson removed the louvered panel door in the upper part of the furnace. Stephenson testified that the two doors were completely separate and that the louvered panel door could be removed without affecting the solid panel door. He also testified that he had no reason to need access to the filter and blower when he turned off the gas and relit the pilot light, but that he had trouble replacing the louvered panel door. After Stephenson relit the pilot light, he let the furnace run for a

short time and tested for the presence of carbon monoxide at the furnace but not inside the house. Whitfield testified that at supper she began to feel sick and stopped eating, and because she was also drowsy, she went to bed.

The next day, Whitfield went to church and out to lunch and got home late; she did not testify that she felt ill that day. She testified that on March 3 she realized she was sick. On March 7, Whitfield drove to Texas to visit her grandson. She stayed until March 9, when she returned home. She testified that she felt good on the trip. On March 10, she was sick again. On March 11, she felt worse, and her daughter took her to see Dr. Stangebye. She told the doctor that she felt bad, with aches, nausea, and pounding of her heart. At that time, he diagnosed her as having an acute viral illness.

On March 12, Sosa changed the tank on Whitfield's water softener. The water softener was located in the furnace room about nine inches away from the front of the furnace. Whitfield opened the room for him and waited until he finished replacing the tank. Both she and Sosa testified that he did not touch the furnace. However, Whitfield could not see the furnace unless she stepped inside the room and looked to the right. After Sosa finished, Whitfield locked the door to the furnace room.

On March 13, Whitfield's daughter stopped by the house to bring her mother lunch and found her incoherent and very ill. Whitfield was taken to the hospital, where she stayed until March 18. Her symptoms were listed as confusion, nausea, vomiting, and headaches. She had pus cells in her urine and had a temperature of 101 degrees; Stangebye diagnosed her as having a kidney infection. However, Stangebye later concluded that she was suffering from carbon monoxide poisoning and a kidney infection and that she had been suffering from carbon monoxide poisoning when he saw her on March 11.

On March 18, she returned home when her temperature went down, and although she felt somewhat better, she still felt ill. Because she was not feeling well, her daughter and son-in-law decided to stay with her overnight. After midnight, on March 19, all three awoke and were ill. They called for help and, barely conscious, were taken to the hospital. When a police officer broke into the furnace room and looked inside, the solid panel door was slightly ajar and upside down. Whitfield and the Andruses were diagnosed as having carbon monoxide poisoning.

On March 20, Moore came out to check the furnace, which had been reassembled, and found nothing wrong. He examined the filter and found that it was clean. Moore also testified that if the filter became too dirty the furnace would shut itself off, but that many furnaces could go from August to March without a problem.

ISSUE # 1.

The first issue on appeal is whether the district court erred by not granting the gas company's motion for a directed verdict. The gas company argues that the jury's determination of negligence was not based on a reasonable inference from the evidence.

If a defendant's motion for a directed verdict at the close of the plaintiff's case is denied and defendant proceeds to put on its case, its claim of error is waived. *Biesecker v. Dean*, 86 N.M. 564, 525 P.2d 924 (Ct.App.1974), *rev'd on other grounds*, 87 N.M. 389, 534 P.2d 481 (1975). The gas company renewed its motion for a directed verdict after all the evidence had been presented, thus maintaining its right to challenge on appeal the sufficiency of the evidence supporting the jury's verdict. *Id.*

When reviewing the sufficiency of the evidence supporting the verdict, all presumptions and facts are to be viewed in the light most favorable to the prevailing party. *Mascarenas v. Gonzales*, 83 N.M. 749, 497 P.2d 751 (Ct.App.1972). "We will indulge all reasonable inferences in support of the verdicts, disregarding all inferences or evidence to the contrary. It is for the jury, not us, to weigh the testimony, determine the credibility of witnesses, reconcile

inconsistent or contradictory statements of a witness, and say where the truth lies." *Id.* at 751, 497 P.2d at 753.

Circumstantial evidence may be used to prove facts. SCRA 1986, 13–308. However, such evidence is limited by the rule that inferences drawn must be reasonable. Where the evidence is arguably consistent with two hypotheses, it tends to prove neither. *Stambaugh v. Hayes*, 44 N.M. 443, 103 P.2d 640 (1940). A reasonable inference cannot be based on supposition or conjecture. *Id.* However, the evidence need not exclude every other possible theory. *See Carter Farms Co. v. Hoffman–Laroche, Inc.*, 83 N.M. 383, 492 P.2d 1000 (Ct.App.1971). A conclusion must be rationally and logically drawn from the facts established by the evidence when viewed in the light of common experience. *Bendorf v. Volkswagenwerk Aktiengesellschaft*, 90 N.M. 414, 564 P.2d 619 (Ct.App. 1977). To support a conclusion, the circumstantial evidence must be capable of convincing a rational juror that the conclusion is more probable than any other alternative.

In this case, there was evidence that no problem with the furnace existed before Stephenson worked on it. Whitfield testified that no one except representatives from either the gas company or the water company had entered the padlocked furnace room between March 1 and March 19. In addition, Whitfield described that she became ill on the evening of March 1, the day of Stephenson's visit. She felt sick to her stomach, drowsy, and achy, but felt better when she was away from the house. Stangebye testified to a reasonable medical certainty that on March 11 Whitfield was suffering from carbon monoxide poisoning. It was undisputed that the presence of carbon monoxide was attributable to the incorrect placement of the solid panel furnace door.

The gas company argues that there was no proof that Whitfield's illness on March 1 was caused by carbon monoxide. It notes that there was no medical evidence that Whitfield suffered from carbon monoxide poisoning until March 11 and contends that the jury was required to speculate that Whitfield's illness stemmed from carbon monoxide poisoning rather than the kidney infection. It also notes that she testified her furnace only came on between 4:00 and 8:00 a.m. and that, even if Stephenson had replaced the solid panel door incorrectly, Whitfield would not have noticed carbon monoxide until the early morning hours of March 2, the day after his visit.

Whitfield testified with considerable specificity about her symptoms on March 1 and March 11. Her symptoms on March 1 corresponded with her symptoms on March 11. On March 1, she was sick to her stomach, drowsy, achy, and had a runny nose. On March 11, she felt "heavy," experienced nausea, and felt achy. She testified she was sick again on March 3 and March 10. Stangebye testified that she was suffering from carbon monoxide poisoning on March 11. This evidence supports an inference that Whitfield was suffering from carbon monoxide poisoning on March 1. We are not persuaded that further medical evidence was required to support the inference. *Cf. Mascarenas v. Gonzales* (where negligence is demonstrated by facts which can be evaluated by resorting to common knowledge, expert testimony is not required).

After Stephenson lit the pilot light, he allowed the furnace to run for a few minutes. Apparently the furnace had to run for a short period of time before the blower would operate. As a result, the furnace did operate at least briefly during the afternoon of March 1. Thus, we cannot say the jury was required on the physical evidence to disbelieve Whitfield's account of feeling ill during the evening of March 1.

Moreover, the inference that Whitfield suffered from carbon monoxide poisoning on March 1 was not essential to a verdict in plaintiffs' favor. Since there is medical testimony that Whitfield suffered from carbon monoxide poisoning on March 11, only a few days after Stephenson's visit and prior to Sosa's visit, the jury could have concluded that Stephenson's acts led to the furnace problem, even if it doubted that

Whitfield experienced symptoms of carbon monoxide poisoning on March 1.

The gas company also argues that Whitfield did not prove that Stephenson was the only person who could have replaced the solid panel door improperly. It notes that there was evidence that the filter had been recently cleaned. Moore's testimony, to which the gas company refers, is not a clear statement that the filter had been recently cleaned. One could not infer from the testimony that the filter had been cleaned within a particular period. Thus, the jury was not required on the physical evidence to reject Whitfield's testimony that no one other than Stephenson had had access to the furnace during the pertinent period.

■ Finally, the gas company argues that there was no evidence that the solid panel furnace door was in a proper position when Stephenson entered the furnace room. We disagree. The evidence that Whitfield had experienced no difficulties with the furnace before March 1 and only then or shortly thereafter began to suffer from carbon monoxide poisoning supports an inference that the door was placed incorrectly that day.

The gas company notes that the furnace had two doors and that Stephenson had reason to open only the louvered panel door. In addition, the gas company argues that it is illogical to suppose that a senior serviceman with twenty years' experience would have forced the solid panel door upside down. There was evidence that it was easier to replace the door in the proper position. Thus, there was evidence from which the jury might have determined that the solid panel door was installed upside down before Stephenson's visit on March 1 and fell open sometime later. However, the jury was free to reject this possibility.

To support a conclusion, circumstantial evidence need not exclude every other alternative. *See Corlett v. Smith*, 107 N.M. 707, 763 P.2d 1172 (Ct.App.1988). Although the jury might have decided that Whitfield was mistaken and it was more likely than not that someone other than Stephenson replaced the door incorrectly,

the jury also was entitled to believe Whitfield. If the jury believed her, they were entitled to infer that Stephenson replaced the door incorrectly.

The jury might have reasoned that, despite Stephenson's experience, he was unfamiliar with Whitfield's furnace. At his deposition, he testified that he did not remember anything about the solid panel door. If he was not sure which door gave access to the pilot light, the jury was free to determine that he might have opened the solid panel door in attempting to locate it. The jury could have concluded further that if he was unfamiliar with the furnace, he might have replaced the door incorrectly without realizing that there was an easier alternative.

Because Whitfield testified that her symptoms began shortly after the gas company relit the pilot light on her furnace, the room was padlocked, and no one else worked on the furnace, it was reasonable for the jurors to draw from their own experiences to conclude that Stephenson must have replaced the solid panel door incorrectly. Under these circumstances, the jury was entitled to determine that the gas company was liable for plaintiffs' injuries.

ISSUE # 2.

■ The gas company also argues that the district court erred in instructing the jury on a second negligence theory concerning the gas company's duty of care. Plaintiffs' second negligence theory was that Stephenson failed to test Whitfield's furnace properly after he relit the pilot light. Jury Instruction No. 1 included language that "Defendant Gas Company of New Mexico failed to properly test for carbon monoxide after lighting the pilot light in her furnace allowing carbon monoxide to asphyxiate the plaintiffs." To preserve error in instructing the jury, the gas company was required to object or tender a correct instruction. *See* SCRA 1986, 1–051(I). To preserve an issue for appellate review, the objection must be specific enough to alert the district court to the particular vice in the defective instruction. *See Salinas v. John Deere Co.*, 103 N.M. 336, 707 P.2d 27

(Ct.App.1984). A party must raise the same objection on appeal that was raised at trial. *Id.*

■ At trial, the gas company objected to Jury Instruction No. 1:

On the grounds that contention number two contained in the Court's Instruction No. 1 asserts a claim for which there's been no evidence of a duty. There is no evidence that Gas Company was under a duty to search for and to find problems with the furnace caused by other persons. They had no duty higher than to leave the property as they found it.

On appeal, however, the gas company argues that there was no proof that the manner in which Stephenson tested for carbon monoxide caused plaintiffs' injuries. It contends specifically that there was no evidence that the manner in which Stephenson tested for carbon monoxide would not have detected it or that he would have detected carbon monoxide had he tested for it in the house.

We understand the contention on appeal as a claim that the instruction was not supported by sufficient evidence. At trial, however, the objection made by the gas company did not refer either to causation or to the sufficiency of the evidence to support the instruction. Therefore, we conclude the objection made at trial was not specific enough to alert the district court to the contention made on appeal.

We acknowledge that we have reviewed the challenge to the sufficiency of the evidence to support Jury Instruction No. 1 on the basis that the gas company's motion for a directed verdict at the close of trial preserved that issue on appeal. We note that the gas company's motion for a directed verdict was directed at plaintiffs' theory that Stephenson replaced the door incorrectly. Plaintiffs' theory that Stephenson tested for carbon monoxide incorrectly was recognized by the parties when they were settling jury instructions, but defendant made no further motion directed at the sufficiency of the evidence to support a violation of the duty alleged in the instruction. We conclude that the gas company did not preserve the right to challenge the

evidence to support the instruction on testing. *See Romero v. Mervyn's,* 109 N.M. 249, 253, 784 P.2d 992, 996, fn. 2 (1989). As for the gas company's argument that there was *no* evidence that Stephenson's manner of testing was the proximate cause of plaintiffs' injuries, we believe that the evidence that Stephenson did not check for carbon monoxide in the usual manner and that Whitfield suffered symptoms of carbon monoxide poisoning that very day constitute *some* evidence, even though it might not be deemed sufficient to support a verdict.

■ The gas company also argues that it was under no duty to inspect Whitfield's furnace and to discover that someone else had placed the solid panel door incorrectly. *See Ortiz v. Gas Co. of N.M.,* 97 N.M. 81, 636 P.2d 900 (Ct.App.1981). The gas company seems to contend that the trial court's instruction misstated the law. In overruling the gas company's objection to the instruction, the trial court said that "the Gas Company [has] a duty before re-lighting the pilot light to make sure that the appliances are safe and that their * * * work card has a certificate that they have conducted a CO2 [sic] test on it."

We find nothing in the trial court's statement that is contradicted by *Ortiz,* on which the gas company relies. In that case, the gas company had installed a meter six years before the accident. This court disagreed with plaintiffs when they argued that the gas company had a duty to inspect on a regular basis or to warn customers that gas appliances are inherently dangerous. Citing *McMurdo v. Southern Union Gas Co.,* 56 N.M. 672, 248 P.2d 668 (1952), *Ortiz* held that "the gas company has no duty to warn or inspect gas appliances which it did not own, install, or control, until the gas company had notice or knowledge that the appliances were defective." *Ortiz v. Gas Co. of N.M.,* 97 N.M. at 83, 636 P.2d at 902. In this case, the gas company did have control over the furnace immediately prior to the onset of Whitfield's illness, and the trial court instructed on a duty of care, rather than a duty to warn or inspect. The duty of care was a

duty to exercise reasonable caution in a task Stephenson undertook on behalf of the gas company.

CONCLUSION.

The trial court did not err in submitting the question of whether Stephenson incorrectly placed the solid panel door on the furnace to the jury nor in instructing the jury on plaintiffs' second theory of negligence. Consequently, the jury's verdict in favor of plaintiffs is affirmed. Although the gas company has requested oral argument, in the opinion of the panel, it is not necessary to the resolution of the issues. *See* SCRA 1986, 12–214(A).

IT IS SO ORDERED.

APODACA and HARTZ, JJ., concur.