[No. B210897. Second Dist., Div. Eight. July 13, 2009.]

LEE WILLIAMS et al., Plaintiffs and Appellants, v.
SOUTHERN CALIFORNIA GAS COMPANY, Defendant and Respondent.

**COUNSEL**

Law Offices of Barry Novack, Barry B. Novack and Jonathan Parrott for Plaintiffs and Appellants.

Sabina B. Clorfeine for Defendant and Respondent.

**OPINION**

**FLIER, J.**—Appellants Lee Williams, Sherrie Powdrill and Lee Williams as guardian ad litem for minors Kalonni and Montice Williams filed an action for personal injuries against respondent Southern California Gas Company and other entities who are not parties to this appeal.[1] The action arose from the malfunctioning of a natural gas wall furnace in a home rented by appellants. Respondent's demurrer to the second amended complaint was sustained without leave to amend because the trial court concluded that discovery responses provided by appellants in a prior action were in conflict with the allegations of the complaint in this case.

---

[1] These entities are ITT Corporation, Emerson Electric Co., White-Rogers Company and Asco Valve.

We do not agree with the trial court's ruling. We find, however, that respondent did not owe appellants a duty of due care. We therefore affirm the judgment.

## BACKGROUND

In substance, respondent's demurrer was sustained because in a prior action, which was also predicated on the malfunctioning of the wall furnace, appellants provided discovery responses, which were inconsistent with the claim advanced in this action, that respondent's negligence was the cause of appellants' injuries. As an example, an interrogatory in the prior action asked appellants to identify the persons who were responsible for the maintenance, service and repair of the wall furnace. Appellants identified such parties and respondent was not among them.

In ruling on the demurrer to appellants' action, the trial court took judicial notice of the discovery responses in the prior action. The trial court's minute order states that the prior discovery responses "are not [judicially] noticed for the truth of the contents of the statements, but as evidence of a material inconsistency between those responses and the allegations of the Second Amend [sic] Complaint." The trial court concluded that appellants "should not . . . be allowed" to plead facts that contradict their prior discovery responses. We return to the details of the trial court's ruling in a separate part below.

We turn first to the prior action and summarize its salient relevant aspects.

## APPELLANTS' PRIOR ACTION

1. *The Prior Action*

On April 5, 2006, appellants filed an action against Hy T. Chhun, Brian Kelly individually and as trustee of the Kelly Family Trust, and the Williams Furnace Company. In this action appellants alleged that a wall furnace manufactured by the Williams Furnace Company was defective because it permitted an excessive amount of carbon monoxide to seep into the living quarters occupied by appellants. Appellants were renting the property where the wall furnace was located. Brian Kelly and the trust were the former

owners of the property and Hy T. Chhun was its current owner. The Kelly defendants were dismissed because the defect was latent, as alleged in the complaint; this left Chhun and the Williams Furnace Company. Respondent was never named as a party in the prior action.

2. *The Interrogatories in the Prior Action and Appellants' Responses Thereto*

The discovery responses provided by appellants in the prior action can be grouped into responses dealing with the *inspection* of the wall furnace, who had *knowledge* of the condition of the wall furnace, and the persons responsible for the *maintenance* of the furnace.

We do not reproduce the interrogatories verbatim but rather state their substance. We refer to the interrogatories by their original numbers. We give the responses provided by Williams and Powdrill, the adults, whom we will refer to as appellants.

Interrogatory No. 3 asked whether appellants or anyone acting on their behalf inspected the wall furnace. The answer was that there was "no formal inspection."[2] Interrogatory No. 5 asked appellants to describe any inspection of the wall furnace conducted by them or anyone acting on their behalf. The answer was: "There was no formal inspection. I noticed that the cover, which was exposed to plain view, was discolored." Interrogatory No. 6 asked appellant to identify each person who inspected the wall furnace and appellants responded that they themselves had inspected the wall furnace. When asked by interrogatory No. 7 to state the results of an inspection of the wall furnace, appellants again stated that there was no formal inspection. Interrogatory No. 17 asked appellants if anyone had tested or examined the wall furnace to see whether it was functioning properly; the answer was no. And interrogatory No. 93 requested appellants to state the facts that supported their claim that the wall furnace had not been inspected properly. The answer to this was that the former and current owners of the property had failed to properly inspect the wall furnace.

The former and current owners were also identified in response to interrogatory No. 83 as the persons who had knowledge of the condition of the wall furnace. Interrogatory No. 159 asked appellants to identify the persons who had knowledge about the claim that the wall furnace had not been properly maintained, serviced or repaired. In addition to the former and current owners, the response listed Jaime Avila, an employee of respondent's, and personnel from the Los Angeles city fire department. The latter and Avila inspected the wall furnace after the incident that injured appellants.

---

[2] The answer was erroneously numbered as No. 2.

Finally, interrogatory No. 154 asked appellants to identify the persons who were responsible for the maintenance, service or repair of the wall furnace. Appellants responded by naming Williams Furnace Company and the former and current owners.

### 3. The Prior Action Is Settled

The prior action was settled by a payment of $180,000 by the Williams Furnace Company. Chhun also settled but the record does not reflect whether he contributed to the settlement. There was a finding that the settlement had been entered into in good faith. The order approving the settlement was entered on August 27, 2007. The original complaint in the instant action was filed on November 27, 2007.

## THE ALLEGATIONS OF THE INSTANT ACTION

The second amended complaint contains four causes of action, each brought by one of the four plaintiffs, against respondent; the remaining seven causes of action are against the defendants who are not parties to this appeal. (See fn. 1, *ante*.)

The four causes of action against respondent are identical. It is alleged that respondent is a utility company that supplies natural gas to Southern California and that respondent makes inspections of residential premises supplied with natural gas. The premises rented by appellants "had natural gas appliances which included a wall furnace, water heater and stove."

The complaint alleges that respondent's agents were on the premises twice, once in May 2005, three months before appellants moved in, and a second time between August and December 2005 when appellants were living there. The purpose of the visits was to inspect the gas water heater "and for other purposes." In order to reach the gas water heater, respondent's agent "would have to enter into the small living room, and pass in front of the gas wall furnace before entering the closet where the gas water heater was located. On each of these occasions during 2005 when the [respondent] Gas Company personnel entered the premises, the gas wall furnace was covered with a long metal grate cover. On each of the occasions, the covering of the gas wall furnace was in plain view to anyone passing through the living room to enter the area where the water heater was located. The cover had a large visible black discoloration with soot on the grate. The discoloration of the wall furnace grate was a telltale sign to Gas Company personnel that the gas wall furnace was venting toxious [*sic*] and potential [*sic*] lethal carbon monoxide fumes into the living quarters of the premises. On each of the occasions the Gas Company personnel had actual and/or constructive notice of the fact that

the gas wall furnace was venting unsafe carbon monoxide fumes into the living quarters of the premises. The condition and appearance of the gas furnace grate was a clear indication to the Gas Company personnel that there was a problem with the gas furnace that required immediate attention and correction."

The complaint goes on to allege that respondent was negligent in (1) inspecting, testing, servicing and repairing the gas wall furnace; (2) failing to warn appellants of the unsafe condition of the gas wall furnace; (3) failing to warn appellants of the "significant hazard in the gas wall furnace" of which respondent had actual or constructive notice, thus permitting the emission of lethal amounts of carbon monoxide from the gas wall furnace; and (4) allowing the gas wall furnace to remain in a dangerous condition.

## THE TRIAL COURT'S RULING

As we have already noted, the trial court concluded that appellants' discovery responses in the prior action were inconsistent with the allegations of the second amended complaint. The trial court focused particularly on interrogatories Nos. 83, 154 and 159. Respectively, the responses to these interrogatories were that it was the former and current owners who had knowledge of the condition of the wall furnace; that it was these two parties who were responsible for the maintenance of the wall furnace; and that the same parties had knowledge about the claim that the wall furnace had not been properly maintained. Respondent was not named in any of these responses.

The trial court noted that appellant Powdrill had known all along that one of respondent's agents had walked past the wall furnace before the incident that resulted in appellants' injuries.

The trial court concluded that appellants "should not now be allowed to contend that this visit by [respondent's] employee gave rise to a duty to act upon what could be observed from walking past the wall furnace because that argument flatly contradicts their prior sworn responses to the contrary."

## DISCUSSION

1. *The Principle That Is at Issue Is That of "Truthful Pleading"*

The principle on which the trial court's ruling is based is that of truthful pleading. A basic statement of that principle appears in the classic pleading manual by David Dudley Field, which is set forth in relevant part in 4 Witkin, California Procedure (5th ed. 2008) Pleading, section 397, page

535: " 'The pleadings must be true. That is to say, the pleader must set forth his case as he believes it . . . the rule is universal and inexorable, that nothing whatever should be alleged which is not believed to be true; and the lawyer who inserts any statement, no matter how trivial, which he does not believe, violates that rule, and with it, his duty as an officer of the law.' " Witkin goes on to state that this pronouncement "seems a little drastic" because we "permit inconsistent counts based on the same cause of action" (*ibid.*), an observation that applies to this case, as we shall see. In any event, one of the several applications of the principle of truthful pleading is that "[f]alse allegations of fact, inconsistent with annexed documentary exhibits [citation] or contrary to facts judicially noticed [citation], may be disregarded, and factual contradictions within a verified complaint may result in admissions [citation]." (*Id.* at p. 536.)

■ In cases when the pleading conflicts with facts judicially noticed, Witkin states that the "theory is that the pleader should not be allowed to bypass a demurrer by suppressing facts that the court will judicially notice. The principle is that of truthful pleading, and is applied for the same reason as in the similar situation of pleaded exhibits which contradict allegations." (4 Witkin, Cal. Procedure, *supra*, Pleading, § 440, p. 572.)

We examine the trial court's ruling with these fundamentals in mind.

2. *Whether Respondents Knew of the Defect in the Wall Furnace Is Not a Proper Subject of Judicial Notice*

Appellants' theory vis-à-vis respondent is that there was visible black discoloration on the grate cover of the wall furnace, that an agent or employee of respondent's had to walk past the wall furnace in order to get to the water heater, and that the significance of this discoloration was that it showed that the wall furnace was venting carbon monoxide into the living quarters. Whether these are facts upon which respondent's liability can be predicated, is another question to which we return below. Here we note only the facts, or more properly the factual allegations, that constitute appellants' case against respondent.

We begin by noting that there is nothing inconsistent between a claim asserted against the manufacturer of the wall furnace and the owners of the premises, based on the theory that the wall furnace malfunctioned, and a claim against respondent that is based on the visible discoloration of the grate cover of the wall furnace that should have been noted. These claims are not inconsistent. At most, they are alternative factual allegations relying on alternative legal theories; this does not run afoul of truthful pleading. (4 Witkin, Cal. Procedure, *supra*, Pleading, § 402, p. 543.)

The fundamental flaw in the trial court's decision is not that it took judicial notice of the discovery responses but that the court took two additional steps. First, the court inferred from the discovery responses that respondent was not aware of any defect in the wall furnace. (Appellants did not identify respondent as a party who had knowledge of the condition of the wall furnace [interrogatory No. 83] or as a party who had knowledge about the claim that the wall furnace had been maintained improperly [interrogatory No. 159].) Second, the court concluded that the allegations of the complaint that we have summarized above were not truthful. Both of these conclusions are flawed.

As far as respondent's knowledge of the defects of the wall furnace is concerned, there are valid reasons why no mention was made of respondent in the discovery responses of the prior action. As an example, while appellant Powdrill may have been aware of the visit by respondent's agent, appellants may not have learned until after completing the discovery responses that the discoloration on the grate cover was significant and what it signified. If this is true, the discovery responses in the prior action were accurate and complete. In fact, we note that appellants state in their opening brief that they did not learn of respondent's involvement until after the discovery responses in question were served. We do not pass upon the accuracy of this assertion; we simply note that it is quite plausible.

It is also possible that appellants deliberately omitted mentioning respondent in the discovery responses in the prior action. While this was inappropriate, it is also true that appellants never stated affirmatively in the prior action that respondent did *not* inspect the wall furnace. Be that as it may, all this amounts to is a violation of rules of discovery *in the prior action.* We do not think that barring what is presumptively a valid subsequent action is a sanction that is authorized for failure to make full discovery in a *prior* action. In other words, the court terminated this case for discovery abuse that occurred in the prior action. This is neither logical nor permissible.[3] Be that as it may, if the omission was deliberate, it impugns the integrity of the discovery responses in the prior action and *not* the truthfulness of the pleadings in this action.

█ Whether respondent was not mentioned in the discovery responses because appellants did not know of respondent's potential liability or whether appellants deliberately omitted mention of respondent, it was not proper to conclude, based on the discovery responses, that respondent was not aware of any defect in the wall furnace. What respondent knew, and when respondent knew it, is not a proper subject of judicial notice. As the courts have noted,

---

[3] If a deliberate omission of respondent had been raised as a discovery abuse in the prior action, it would hardly have led to the dismissal of the prior action.

" 'judicial notice of matters upon demurrer will be dispositive only in those instances where there is not or cannot be a factual dispute concerning that which is sought to be judicially noticed.' " (*Joslin v. H.A.S. Ins. Brokerage* (1986) 184 Cal.App.3d 369, 375 [228 Cal.Rptr. 878], citing *Cruz v. County of Los Angeles* (1985) 173 Cal.App.3d 1131, 1134 [219 Cal.Rptr. 661].) Respondent's knowledge of the defects of the wall furnace is obviously a sharply contested fact.

Nor was it permissible to conclude that the pleadings in this case are false because the truth is reflected in the discovery responses in the prior action, the "truth" being that respondent was not aware of any defect in the wall furnace. (On appeal, respondent insists it was not aware of any defects in the wall furnace and supports this claim by citing discovery responses showing it did not inspect the furnace and the responses to interrogatories Nos. 83, 154 and 159.)

■  We are unaware, however, of any authority that would permit a trial court to decide on a general demurrer that a complaint is false in whole or in part. Indeed, the rule is exactly to the contrary. A general demurrer admits the truth of all material facts properly pleaded (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967 [9 Cal.Rptr.2d 92, 831 P.2d 317]); a court ruling on a general demurrer is not empowered to "ascertain whether the facts stated [in the complaint] are true or untrue." (*Colm v. Francis* (1916) 30 Cal.App. 742, 752 [159 P. 237].)

While the court could take judicial notice of the discovery responses, it was not authorized to draw from those responses the inference that respondent was unaware of defects in the wall furnace, nor was it correct to find, based on this inference, that the operative complaint was not truthful. For these reasons, we conclude that the trial court erred in sustaining the demurrer on the ground that the discovery responses were inconsistent with the second amended complaint.

3.  *Judicial Estoppel*

■  The circumstances we have discussed in part 2. of the Discussion suggest judicial estoppel. That is, judicial estoppel may be invoked when a party has taken inconsistent positions in litigation. (*Coleman v. Southern Pacific Co.* (1956) 141 Cal.App.2d 121, 128 [296 P.2d 386].) Interestingly, respondent energetically rejects the suggestion that the trial court relied on this doctrine, while appellants point out that the doctrine does not apply because the positions taken were not truly inconsistent and, even if they were, appellants only learned later, after the discovery responses, that respondent was aware of defects in the wall furnace.

Respondent is correct that the trial court did not rely on this doctrine. Apparently, it was never mentioned in the proceedings below. As a result, the factual predicates were never developed. That is, there is nothing to show when appellants learned of respondent's alleged knowledge of the defects in the wall furnace. Given that the predicate facts have not been reliably developed, we decline to address the questions whether judicial estoppel applies and whether it should be applied in this case.

## 4. The Duty of Due Care

After the briefing was concluded, we notified the parties that we were considering the question whether respondent owed appellants a duty of due care. We did so because this issue was not briefed in depth. Evidently, the trial court found that respondent owed appellants a duty of due care when it ruled on the demurrer to the first amended complaint.

The parties have submitted supplemental briefs on this issue and also addressed this matter during oral argument.

Appellants contend that respondent owed them a duty of due care because it had knowledge of the fact that the wall furnace was emitting carbon monoxide. Factually, this claim is predicated on the allegations that respondent's personnel had to walk past the wall furnace to get to the water heater and in plain view on the wall furnace was a black discoloration that indicated that the furnace was venting carbon monoxide into the apartment.

■ "As a rule, one has no duty to come to the aid of another. A person who has not created a peril is not liable in tort merely for failure to take affirmative action to assist or protect another unless there is some relationship between them which gives rise to a duty to act." (*Williams v. State of California* (1983) 34 Cal.3d 18, 23 [192 Cal.Rptr. 233, 664 P.2d 137].) This principle is generally recognized and accepted. (Rest.2d Torts, § 314; Harper, James and Gray on Torts (3d ed. 2007) § 18.6, p. 874, fn. 11.) This rule applies "no matter how great the danger in which the other is placed, or how easily he or she could be rescued" (6 Witkin, Summary of Cal. Law (10th ed. 2005) Torts, § 1038, pp. 332–333 [citing authorities]) and even if the actor "realizes or should realize that action on his part is necessary for another's aid or protection" (Rest.2d Torts, § 314).[4]

In their supplemental brief, appellants state that respondent "had **knowledge** of a dangerous condition in appellants' gas appliance. Appellants'

---

[4] The full text of Restatement Second of Torts, section 314 is as follows: "The fact that the actor realizes or should realize that action on his part is necessary for another's aid or protection does not of itself impose upon him a duty to take such action."

injuries were thus **foreseeable** to [respondent]." (Original boldface.) This is an incorrect statement of the law. As Restatement Second of Torts, section 314 makes clear, the circumstance that respondent should have realized that there was a defect in the wall furnace did not impose a duty on respondent to take action or to warn appellants. Standing alone, knowledge of a dangerous condition does not impose a duty on respondent.

Appellants cite *Ambriz v. Petrolane Ltd.* (1957) 49 Cal.2d 470 [319 P.2d 1] (*Ambriz*) for the proposition, advanced in their supplemental brief, that "gas companies have a duty to address dangerous conditions created in part by the gas they supply." This is not what *Ambriz* held.

In *Ambriz*, Petrolane Ltd. (Petrolane) was a seller of butane. A codefendant of Petrolane's delivered the butane to the accident site, which was one of several cabins on a farm used by itinerant farm laborers and their families employed on the farm. There was a single, 600-gallon butane gas tank from which pipes ran to the several cabins. In the case of the accident site, the gas line came in through the back wall of the cabin and extended a foot into the cabin. The end of the pipe was not capped but it was closed off with a valve. There was expert testimony that valves were not sufficient to prevent leaks from the pipe. (*Ambriz, supra*, 49 Cal.2d at pp. 474–475.) In fact, Petrolane's district manager Herman inspected the pipes leading to the cabins at a time or times before the accident and he found leaks in the pipes, and informed the owner of the farm of that fact. There were a number of simple ways of testing the pipes and valves for leaks. (*Id.* at p. 476.)

The plaintiffs, a husband and wife, and their three small children arrived to work at the farm on October 3, 1953. There had been no gas in the 600-gallon tank for months and at about this time the season's first delivery of butane gas took place. Herman, who knew how to test for leaks and who had in fact performed such tests in the past, performed no inspections or tests and did not give any instructions to anyone to do so. Unfortunately, the Ambriz family cooked over a kerosene stove that they brought with them. In the evening of October 8, 1953, the stove continued to glow after it had been turned off for the night. Shortly after that, there was an explosion that killed the three children and injured Mr. and Mrs. Ambriz. It was determined after the explosion that the valve of the butane pipe in their cabin was partly open. (*Ambriz, supra*, 49 Cal.2d at pp. 476–477.)

Given these facts, the court concluded that Petrolane owed a duty of care to the Ambriz family. (*Ambriz, supra*, 49 Cal.2d at p. 477.) But there are two critical distinctions between *Ambriz* and the case before us.

First, the defect in *Ambriz* was in the pipe and its valve and not in an appliance, as in this case. The court noted that when the gas company is

aware of defects in the pipe carrying the gas, the company must take precautions to cure the defect. (*Ambriz, supra,* 49 Cal.2d at pp. 478–479.) This is not the same as saying that the gas company is liable for defects in an appliance.

■ It is true that when the gas company has installed the defective appliance that causes gas to explode, the gas company is liable. (*Hilson v. Pacific G. & E. Co.* (1933) 131 Cal.App. 427, 429–430, 432 [21 P.2d 662].) But here respondent had nothing to do with the wall furnace; it did not install or inspect it nor did it sell or lease the appliance to the owner of the premises. "The cases are uniform in holding that a person supplying gas or electricity is not responsible for the condition of the conductors or pipes on the premises of consumers which the former does not own or control [citations], and the same rule must on principle apply to the customer's own appliances provided by him for the consumption of the commodity supplied." (*Ray v. Pacific Gas & Electric Co.* (1934) 3 Cal.App.2d 329, 337 [39 P.2d 812].) As one text has put it, a gas company's duty is only to maintain its own lines and ends at the meter box (31A Cal.Jur.3d (2002) Explosions and Explosives, § 30, p. 605, citing inter alia *Lewis v. Southern Cal. Gas Co.* (1928) 92 Cal.App. 670 [268 P. 930]), "unless some defect has been discovered of which the gas company has notice, requiring the company to discontinue its service until the defect is remedied, and it fails so to do." (*Lewis v. Southern Cal. Gas Co., supra,* at p. 678.)

Interestingly, the court of appeals of New Mexico concluded a few years ago that the gas company was not under a duty to warn the tenants of an apartment that a gas furnace was inherently dangerous and could become faulty with use. (*Ortiz v. Gas Co.* (Ct.App. 1981) 97 N.M. 81, 83 [636 P.2d 900].) As in the case before us, the gas furnace poisoned the tenants with carbon monoxide. And, as in the case before us, the gas company did not own, install or control the furnace, or the use of the furnace. (*Ibid.*) We find this to be an important fact in the instant case, as did the court in *Ortiz v. Gas Co.*

Second, in *Ambriz,* Petrolane's Herman actually inspected the pipes and found them to be defective. That did not happen in this case, i.e., respondent did not inspect the wall furnace nor did it ever determine that the wall furnace was defective.

In their supplemental brief, appellants contend that they would not have been injured if respondent "had not continued to supply gas to the wall furnace." But no California case nor, for that matter, any case in any

jurisdiction of which we are aware[5] has held a gas company to be strictly liable simply because it supplied gas. *Ambriz* itself is quite clear in holding that there must both be a defect in the pipe and knowledge of the defect before liability is imposed. (*Ambriz, supra,* 49 Cal.2d at pp. 478–479.)

Formulated to its best advantage, appellants' theory is that the discoloration on the wall furnace put, or should have put, respondent on notice that the wall furnace was not venting properly. The flaw in this theory is that this addresses a defect in the appliance and not a defect in any product or service generated or furnished by respondent. Neither logic nor, as we point out below, policy considerations support this theory. And there is authority explicitly to the contrary. (*Ray v. Pacific Gas & Electric Co., supra,* 3 Cal.App.2d 329, 337.)

Respondent's legal relationship to the wall furnace and the discoloration on the furnace is most accurately described by Restatement Second of Torts, section 314. That is, drawing every inference in appellants' favor, respondent may well have realized that appellants were in peril but this, *standing alone,* did not impose a duty on respondent to take action. (See fn. 4, *ante.*)

We do not think that this is a harsh result. From a policy perspective, it is the manufacturer and/or the lessor of the wall furnace who should be responsible for its condition; indeed, it may be that appellants as tenants were not free of some responsibility themselves. In the same vein, it appears inequitable to impose liability on respondent for the condition of an appliance over which it had no control and which it did not sell or lease to appellants. As far as the wall furnace is concerned, respondent was a bystander who was not under a duty to act.

We have given appellants' complaint the most favorable construction and have drawn every inference in their favor. We are satisfied that appellants could not amend their complaint to cure the defect that we have identified. Accordingly, the order sustaining the demurrer without leave to amend should be affirmed.

We disagree with the trial court's reason for sustaining the demurrer without leave to amend. We affirm, however, the trial court's decision and not the reason for that decision. (*Davey v. Southern Pacific Co.* (1897) 116 Cal. 325, 329 [48 P. 117].)

---

[5] A national survey of pertinent cases appears in 27A American Jurisprudence Second (2008) Energy and Power Sources, sections 298–307, pages 291–299.

## DISPOSITION

The judgment is affirmed. Respondent is to recover its costs on appeal.

Rubin, Acting P. J., and Bigelow, J., concurred.

On August 10, 2009, the opinion was modified to read as printed above. Appellants' petition for review by the Supreme Court was denied October 22, 2009, S175624.