This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**PAUL DOMINGUEZ,**

Plaintiff-Appellant,

v.                                                                                          **NO. 29,851**

**NORTHERN MOUNTAIN CONSTRUCTORS, INC.**
**d/b/a NORTHERN MOUNTAIN CONTRACTORS,**
**and NORTHERN MOUNTAIN CONSTRUCTION,**

Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF TAOS COUNTY**
**John M. Paternoster, District Judge**

Edmund R. Pitts
Taos, NM

for Appellant

Yenson, Lynn, Allen & Wosick, P.C.
Phillis S. Lynn
Michael S. Jahner
April D. White
Albuquerque, NM

for Appellee

**MEMORANDUM OPINION**

**VANZI, Judge.**

Plaintiff Paul Dominguez appeals the district court's decision granting Defendant Northern Mountain Constructors, Inc.'s (Northern Mountain) Rule 1-050 NMRA motion for directed verdict. Plaintiff raises two issues. First, he argues that the district court erred in ruling that there was insufficient evidence to show that Northern Mountain had a legal duty to Plaintiff. Second, he contends that sufficient evidence was presented at trial for the jury to decide whether Northern Mountain and Perovich Properties, Inc. (Perovich Properties) d/b/a Taos Gravel Products (Taos Gravel) acted as a joint venture or as partners. Because we conclude that the district court did not err in granting Northern Mountain's Rule 1-050 motion, we affirm.

The factual and procedural background is familiar to the parties. Because this is a memorandum opinion, we provide details as necessary to our discussion of the issues raised by Plaintiff.

**DISCUSSION**

**Standard of Review**

"A directed verdict is appropriate only when there are no true issues of fact to be presented to a jury." *Sunwest Bank v. Garrett*, 113 N.M. 112, 115, 823 P.2d 912, 915 (1992). In reviewing the evidence on appeal from a judgment entered pursuant to a directed verdict, we consider all evidence and view any conflicts in the evidence

in favor of the party resisting the directed verdict. *Id.* "Directed verdicts are not favored and should only be granted when the jury cannot reasonably and logically reach any other conclusion." *W. States Mech. Contractors, Inc. v. Sandia Corp.*, 110 N.M. 676, 679, 798 P.2d 1062, 1065 (Ct. App. 1990). However, "[i]t is fundamental that the evidence adduced must support all issues of fact essential to the maintenance of a legally recognized and enforceable claim." *C.E. Alexander & Sons, Inc. v. DEC Int'l, Inc.*, 112 N.M. 89, 93, 811 P.2d 899, 903 (1991) (internal quotation marks and citation omitted). Thus, if the evidence fails to support an issue essential to the legal sufficiency of the asserted claim, there is no right to a jury trial. *Id.* Whether there exists sufficient evidence to support a claim or defense is a question of law for the district court that the appellate court reviews de novo. *See Sunwest Bank*, 113 N.M. at 115, 823 P.2d at 915.

On appeal, Plaintiff raises two issues. First, he argues that Northern Mountain should be held liable for his injuries because Northern Mountain's status as the lessee of the screener imposed on it a legal duty. Second, he claims that Northern Mountain should be held liable because it was involved in a joint venture or partnership with Taos Gravel. We take each argument in turn.

**Northern Mountain Did Not Owe a Legal Duty to Plaintiff**

3

No one disputes that Paul Dominguez was a good employee who was just doing his job when he got seriously injured while working at a gravel processing plant in April 1999. The question in this case, however, is whether Northern Mountain—the sole remaining Defendant—exercised sufficient control over the screener that injured Dominguez to impose on Northern Mountain a duty of care to Defendant.

As a threshold matter, the parties agree that a negligence claim requires that "there be a duty owed from the defendant to the plaintiff." *Romero v. Giant Stop-N-Go of N.M., Inc.*, 2009-NMCA-059, ¶ 5, 146 N.M. 520, 212 P.3d 408. "Whether a duty exists is a question of law for the courts to decide." *Herrera v. Quality Pontiac*, 2003-NMSC-018, ¶ 6, 134 N.M. 43, 73 P.3d 181 (internal quotation marks and citation omitted). Further, the parties generally agree that the question we must ask is "whether [a] defendant has the ability to exercise control over a premise or an activity such that it is reasonable to impose a duty of ordinary care on it as to the management of the premises or activities." *Smith ex rel. Smith v. Bryco Arms*, 2001-NMCA-090, ¶ 25, 131 N.M. 87, 33 P.3d 638; *see also Ortiz v. Gas Co. of N.M.*, 97 N.M. 81, 83, 636 P.2d 900, 902 (Ct. App. 1981) (concluding that "the gas company ha[d] no duty to warn or inspect gas appliances which it did not own, install, or control[.]")

4

Plaintiff here contends there was "an abundance of evidence introduced by Plaintiff showing Northern Mountain had control over the [screener]" and that, therefore, Defendant had a duty of care to him. Specifically, Plaintiff contends the following evidence required that the issue of control and responsibility should have been decided by the jury: (1) the equipment lease with Western Wire Works, Inc. d/b/a Aggregate and Mining Supply (Western Wire); (2) the testimony of safety expert Vince Gallagher; and (3) the shipping documents for the equipment. For the reasons that follow, we disagree. We begin with a review of the evidence introduced at trial concerning the relationship between Northern Mountain and Perovich Properties and then turn to the specific evidence concerning ownership of the screener at issue in this case. Against this backdrop, we address Plaintiff's argument.

The undisputed testimony at trial established that Northern Mountain and Perovich Properties are two separate companies with different names and different officers. The two companies have been in business for different lengths of time and are completely different types of businesses. Northern Mountain is a highway and heavy equipment contractor. It owns backhoes, road graders, trucks, belly dumps, loaders, pavers, extractors, and service trucks. Further, Northern Mountain employs its own mechanics to maintain and repair its equipment. In order to conduct its business, Northern Mountain buys aggregate from Taos Gravel and other suppliers.

When it purchases material from Taos Gravel, Northern Mountain is invoiced the same as all other contractors that purchase aggregate from Taos Gravel. The president and senior manager of Northern Mountain is Patricia Perovich. The only other office holder for Northern Mountain is Helen Perovich.

Perovich Properties, on the other hand, is a business that manufactures gravel products to be used in making asphalt. In addition to manufacturing gravel products, Perovich Properties also hires employees to work at Taos Gravel and Northern Mountain. Taos Gravel owns its own equipment, and that equipment is maintained and repaired by Taos Gravel employees. Northern Mountain and Taos Gravel do not own the same equipment or have the same mechanics. Joey Perovich (Perovich) is the president and senior manager of Perovich Properties, and he is actively involved in the management of that company. He does not hold, and has never held, an office in Northern Mountain. Although Perovich does not have many functions in the day-to-day operations of Northern Mountain, some of his operational responsibilities there include doing a bid, getting quotes on pricing, putting bid packages together, and reviewing bids.

In addition to having different names, officers, and business objectives, Northern Mountain and Perovich Properties have different mailing addresses. Northern Mountain's mailing address is P.O. Box 348, El Prado, NM 87529. The

mailing address for Perovich Properties is P.O. Box 1620, El Prado, NM 87529. The companies share a common office building, however, the offices are separated within the building. Northern Mountain and Taos Gravel do not share profits, losses, or expenses. They have different tax ID numbers and separate payroll accounts. They issue separate W-2 forms for their employees.

Turning to the evidence surrounding the purchase of the screener that caused Dominguez' injury, we begin with the testimony of Randy Brooks. At the time of trial, Brooks was a supervisor at Taos Gravel for about fifteen years and was personally involved in the acquisition of the screener at issue in this case. Brooks initially spoke to Western Wire about pricing and leasing the screener for use by Taos Gravel. He testified that when he inquires about pricing, he does so on behalf of Taos Gravel, not for Northern Mountain. He has never purchased equipment for Northern Mountain. Brooks was involved with the acquisition of two screeners—including the one that injured Dominguez—both of which were purchased for Taos Gravel.

When the screener at issue in this case arrived at the gravel pit, no one from Northern Mountain assisted in setting up the screener or control room, and no Western Wire or Northern Mountain employees operated any of the rock-crushing equipment at that pit. Only Taos Gravel employees worked at the screen plants, and they were responsible for maintaining, repairing, and operating all the equipment, including the

conveyor belts, screens, and crusher. According to Perovich, Northern Mountain did not have anything to do with the screener that injured Plaintiff.

Perovich signed the equipment lease with Western Wire for the screener as "President." The lease states that the "lessee" is Northern Mountain although the mailing address on the signature block belongs to Taos Gravel. Perovich testified that he did not know why Northern Mountain's name is on the lease because Northern Mountain never used the screener and does not use screeners in its operations. He further stated that he did not pay close attention to the lessee name on the document because only the equipment and price were important to him.

There is no dispute that the sales order for the screener stated that it was to be billed and shipped to Northern Mountain. In addition, invoices for the rental of the screener were made out to Northern Mountain. However, until it ultimately purchased the equipment, Perovich Properties made all the lease payments to Western Wire for the screener pursuant to the lease. In 1999, Perovich Properties secured financing through Orix Credit Alliance, Inc. in the amount of $143,100 to purchase the screener. Perovich Properties depreciates the equipment it owns for tax purposes and, beginning in the tax year 1999, it depreciated the screener. The cost being depreciated that year was $116,200, the cost of the screener at the time of purchase. Northern Mountain

made no lease payments on the screener, it did not purchase the screener, and it did not depreciate the screener on its tax schedule.

As we have noted, Plaintiff argues that he introduced three pieces of evidence at trial that demonstrate that Northern Mountain had exclusive custody and control over the screener. First, Plaintiff contends that the equipment lease, which lists Western Wire as the lessor of the screener and Northern Mountain as the lessee, supports his theory of ownership and control. Second, Plaintiff asserts that the shipping document showing that the equipment was billed and delivered to Northern Mountain is further evidence of Northern Mountain's ownership and control of the screener. Finally, Plaintiff relies on the testimony of safety expert Vince Gallagher.

We conclude that the evidence relied on by Plaintiff is insufficient to support a finding that Northern Mountain exercised control over the screener on which he was injured. We begin with Plaintiff's reliance on Gallagher's testimony. Gallagher testified that the lease gave Northern Mountain the right of possession of the equipment. Specifically, when asked if he found any evidence concerning Northern Mountain's role in the accident, Gallagher testified, over Defendant's objection, as follows:

> The lease agreement says that Northern Mountain . . . ha[s] the only right of possession of the equipment and that they agree to keep it in first-class conditions and repair at their own expense. And they agree to provide liability insurance for it.

9

And more importantly[,] at number ten in the agreement entitled use of equipment[,] it says: "The lessee, which is Northern Mountain Constructors, agrees to use, operate and maintain said equipment in accordance with laws." And it was signed by Joey Perovich as president of Northern Mountain.

At the outset, we note that Gallagher was qualified to testify as an expert in the field of occupational safety and health only. He was not qualified to testify as to Northern Mountain's duty and responsibilities under the lease. However, we need not reach the issue of the validity of Gallagher's testimony because it essentially entailed no more than reciting the language in the lease. We therefore look to the lease itself to conduct our analysis.

Left with only the lease's identification of Northern Mountain as the lessee and the identification of Northern Mountain on the shipping document, we now decide whether the district court correctly ruled that Northern Mountain did not owe a legal duty to Plaintiff. As we have said, we conclude that it did. The overwhelming evidence at trial was that the equipment used at the gravel pit was owned, operated, and controlled by Taos Gravel. Although Northern Mountain's name appeared on the lease, the mailing address belonged to Taos Gravel, and the lease was signed by Perovich, who is the president of Taos Gravel, not Northern Mountain. Perovich testified that he did not notice the name of the lessee because he was more concerned with the list and the price of the equipment. Moreover, Plaintiff presented no

evidence to refute testimony that Taos Gravel first leased and then purchased the screener; that Taos Gravel employees set up and operated the screener, crusher, and control room; that Taos Gravel performed all the obligations under the lease; and that Northern Mountain never used the screener referred to in the lease. There was also no evidence discrediting Perovich's testimony that Taos Gravel listed the screener on its depreciation schedule and expense report and that Taos Gravel, not Northern Mountain, obtained financing to purchase the screener several months after the lease was signed. In this case, even viewing the conflicts in the lease and shipping document in favor of Plaintiff, we are nevertheless compelled to conclude that the "facts and inferences are so strongly and overwhelmingly in favor of [Defendant] . . . that reasonable people could not arrive at a contrary result." *Melnick v. State Farm Mut. Auto. Ins. Co.*, 106 N.M. 726, 729, 749 P.2d 1105, 1108 (1988).

Plaintiff cites to *Tafoya v. Rael*, 2008-NMSC-057, 145 N.M. 4, 193 P.3d 551, as support for his assertion that Northern Mountain owed him a duty of ordinary care. In *Tafoya*, our Supreme Court held that, as a matter of public policy, a general contractor owed a duty of care to an unlicensed independent contractor whom the general contractor had hired to perform dangerous work, which resulted in the independent contractor's death. *Id.* ¶ 1. In that case, the defendant, a licensed contractor, was hired to renovate a garage into an apartment. *Id.* ¶ 2. At some point

11

during the construction, the defendant learned that he would have to connect the sewer line from the apartment to the town's main sewer line, and he hired the decedent to dig the trench for the connection. *Id.* ¶¶ 3-4. It was undisputed in *Tafoya* that the defendant was the general contractor for the project and that he hired the decedent as an independent contractor to dig the trench. *Id.* ¶ 4. Ultimately, our Supreme Court based its determination of duty on "clear expressions of policy in the Construction Industries Licensing Act (CILA), NMSA 1978, §§ 60-13-1 to -59 (1964, as amended through 2001), and its corresponding regulations." *Tafoya*, 2008-NMSC-057, ¶ 15.

Plaintiff argues that *Tafoya* controls our determination because "[t]he status of . . . Northern Mountain in this case is essentially one of a general contractor." We disagree. Unlike *Tafoya*, there was no evidence presented—much less undisputed evidence—that Northern Mountain was a general contractor and that the "role of Perovich Properties . . . was essentially a subcontractor." More importantly, as Defendant notes, Plaintiff never raised this argument to the district court and, therefore, it was not preserved for review. "To preserve an issue for review on appeal, it must appear that appellant fairly invoked a ruling of the trial court on the same grounds argued in the appellate court." *Woolwine v. Furr's, Inc.*, 106 N.M. 492, 496, 745 P.2d 717, 721 (Ct. App. 1987). We also observe that Plaintiff did not file a reply brief and dispute Defendant's assertion that he failed to raise this argument before the

12

district court. We have said that "on appeal, the party must specifically point out where, in the record, the party invoked the court's ruling on the issue. Absent that citation to the record or any obvious preservation, we will not consider the issue." *Crutchfield v. N.M. Dep't of Taxation & Revenue,* 2005-NMCA-022, ¶ 14, 137 N.M. 26, 106 P.3d 1273.

We conclude that Northern Mountain did not exercise the requisite amount of control over the screener on which Plaintiff was injured to substantiate any duty of care and/or liability on its part. The district court did not err in granting Northern Mountain's motion for directed verdict.

**Plaintiff Failed to Preserve His Argument That Northern Mountain and Perovich Properties, Inc. Acted as a Joint Venture or as Partners**

Plaintiff argues that the district court erred in failing to allow the jury to consider whether Northern Mountain and Taos Gravel acted as joint venturers or partners with regard to the operation of the screener. Plaintiff does not indicate in his brief in chief where this issue was raised below, and he did not file a reply brief disputing Defendant's contention that the issue was not preserved. Moreover, we have reviewed the record with respect to the motion for directed verdict, and we find no argument by Plaintiff concerning the issue of joint venture or partnership. We therefore decline to review the issue on appeal. *Sandoval v. Baker Hughes Oilfield Operations, Inc.*, 2009-NMCA-095, ¶ 56, 146 N.M. 853, 215 P.3d 791 ("In order to

13

preserve an issue for appeal, [a party] must have made a timely and specific objection that apprised the district court of the nature of the claimed error and that allows the district court to make an intelligent ruling thereon.").

**CONCLUSION**

For the reasons set forth above, we affirm the district court.

**IT IS SO ORDERED.**

_____
**LINDA M. VANZI, Judge**

**WE CONCUR:**

_____
**MICHAEL D. BUSTAMANTE, Judge**

_____
**TIMOTHY L. GARCIA, Judge**